**<u>EXHIBIT B</u>**

**(Redline)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SYNTHEGO CORPORATION,[1] | Case No. 25-10823 (MFW) |
| Debtor. | **Related Docket No. 12** |

**ORDER (A) AUTHORIZING ENTRY INTO ASSET PURCHASE AGREEMENT WITH RESPECT TO THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING BID PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (C) SCHEDULING AN AUCTION AND SALE HEARING, (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF,**
**(E) APPROVING CERTAIN ~~TERMINATION FEE AND~~ EXPENSE REIMBURSEMENT PROVISIONS, AND**
**(F) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtor and debtor-in-possession (the "Debtor"), for the entry of an order pursuant to sections 105(a), 363, 365, 503, 507, 1107, and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to establish certain sales procedures which will culminate in a sale of substantially all of the Debtor's assets, scheduling an auction and sale hearing, approving the proposed ~~termination fee and~~ expense reimbursement in favor of the Stalking Horse Bidder (or an affiliate thereof), and related relief, all as more fully set forth in the Motion; and upon consideration of the First Day

---

[1]    The Debtor's mailing address is 3696 Haven Avenue, Suite A, Redwood City, California, 94063, and the last four digits of the Debtor's federal tax identification number is 9518.

[2]    A capitalized term used but not defined herein have the meaning ascribed to it it in the Motion.

Declarations; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at an interim hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A. The Debtor has articulated good and sufficient reasons for, and the best interests of its estate and stakeholders will be served by, the Court scheduling or fixing dates pursuant to this order (this "Order") for, among other things, the (i) Bid Deadline; (ii) Sale Objection Deadline; (iii) Auction; and (iv) Sale Hearing, each as defined below.

B. The Bid Procedures are fair, reasonable, and appropriate and represent the best available method for maximizing value for the benefit of the Debtor's estate.

C. It is necessary to induce the Stalking Horse Bidder and provide ~~Bid Protections~~the

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Expense Reimbursement pursuant to the terms of this Order.

D.      The Bid Procedures were negotiated at arm's length, in good faith, and without collusion.  The Bid Procedures balance the Debtor's interests in emerging expeditiously from this Chapter 11 Case while preserving the opportunity to attract value-maximizing proposals beneficial to the Debtor's estate, its creditors, and other parties in interest.

E.      The Bid Procedures Notice, Auction Notice, and Notice of Successful Bidder are reasonably calculated to provide the Sale Notice Parties, the Contract Counterparties, and other interested parties with proper notice of the (i) Bid Procedures; (ii) Auction; (iii) Sale Hearing; and (iv) Sale(s).

F.      The Contract and Lease Procedures are fair, reasonable, and appropriate and represent the best available method for maximizing value for the benefit of the Debtor's estate.

G.      The Cure Notice is reasonably calculated to provide the Contract Counterparties and other interested parties with proper notice of the Contract and Lease Procedures (including the Contract Objection Deadline and Additional Contract Objection Deadline).

H.      The Motion, the Bid Procedures, and the Contract and Lease Procedures comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

I.      Due, sufficient, and adequate notice of the relief granted herein has been given to all parties in interest.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted as set forth herein.

2.      All formal and informal objections, if any, to the relief requested in the Motion that have not been withdrawn, waived, or settled are overruled on the merits.

4936-1011-4863.8 82578.00002
4936-1011-4863.11 82578.00002

3.      The Bid Procedures, which are attached hereto as <u>Exhibit 1</u> and incorporated herein by reference, are hereby approved in all respects and shall govern all Bidders and Bids, including those that may be submitted by Qualified Bidders at the Auction.

4.      Bidders seeking to submit Bids for the Assets must do so in accordance with the terms of the Bid Procedures and this Order.

5.      The Debtor is authorized, in accordance with the Bid Procedures, to grant the ~~Bid Protections~~<u>Expense Reimbursement (as defined below)</u> to the Stalking Horse Bidder <u>(or an affiliate thereof)</u>, and such ~~Bid Protections~~<u>Expense Reimbursement</u> may be paid without further action or order by the Court in accordance with the Bid Procedures.  For ~~the avoidance of doubt, the Bid Protections are hereby authorized in the form of (a) a termination fee equal to 1.5% of the Credit Bid (the "Termination Fee") plus (b)~~<u>purposes herein, the "Expense Reimbursement" means an</u> expense reimbursement for the Stalking Horse Bidder<u>"</u>'s actual out-of-pocket costs ~~of~~<u>and expenses</u> not to exceed $1,000,000 ~~(the "~~.  <u>Notwithstanding anything to the contrary in the Motion, the request for approval of a termination fee in favor of the Stalking Horse Bidder has been withdrawn and any such fee is **not** approved hereby.  Any</u> Expense Reimbursement~~" [and, together with the Termination Fee, the "Bid Protections"). Any Bid Protections~~ incurred by the Debtor pursuant to this Order and the Bid Procedures will be payable to the Stalking Horse Bidder <u>(or an affiliate thereof)</u>, in the event the Stalking Horse Bidder <u>(or an affiliate thereof)</u> is not a Successful Bidder, from the proceeds of the cash portion of the Purchase Price of the applicable Successful Bid upon Closing<u>; *provided, however*, that any request for payment of the Expense Reimbursement must be supported by reasonable documentation from the Stalking Horse Bidder (or an affiliate thereof), and the Debtor and the Office of the United States Trustee will be given seven (7) days to review such documentation and submit any objections, including</u>

4936-1011-4863.8 82578.00002
4936-1011-4863.11 82578.00002

the specific reasons for the objection, for decision by the Court prior to payment of the Expense Reimbursement by the Debtor.  Notwithstanding anything to the contrary in the Stalking Horse Purchase Agreement, the Stalking Horse Bidder's sole recourse for payment of the Expense Reimbursement is the proceeds of an Alternative Transaction (as defined in the Stalking Horse Purchase Agreement).

6.    The Sale Hearing is scheduled for **June 27, 2025 at 2:00 p.m. (prevailing Eastern Time)** via Zoom and at the United States Bankruptcy Court for the District of Delaware, United States Courthouse, 824 North Market Street, 5th Floor, Courtroom #4, Wilmington, DE 19801, before the Honorable Mary F. Walrath, United States Bankruptcy Judge.  Parties and witnesses are permitted, but not required, to appear in person.

7.    6. The deadline for all Potential Bidders to submit a Qualified Bid (other than the Stalking Horse Bidder or an affiliate thereof) is **June 24, 2025 at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline"), as set forth in the Bid Procedures.

8.    7. By **June 25, 2025**, the Debtor shall file a notice on the Court's docket (an "Auction Notice") providing notice of the location of the Auction.

9.    8. As set forth in the Bid Procedures, if at least one Qualified Bid is received by the Bid Deadline (in addition to the Stalking Horse Bidder's deemed Qualified Bid), the Debtor will hold the Auction beginning on **June 26, 2025 at 10:00 a.m. (prevailing Eastern Time)** in accordance with the Bid Procedures at the location designated by the Debtor in the Auction Notice.

10.    9. The Cure Notice substantially in the form attached to this Order as Exhibit 3 is approved in all respects.  No other or further notice of the Contract and Lease Procedures, or relevant objection or other deadlines is required.

11.    ~~10.~~ On or before _____ **June 6, 2025**, the Debtor will file and serve the Cure Notice on each of the non-debtor counterparties (the "Contract Counterparties") listed on the Cure Schedule by first class mail.

12.    ~~11.~~ If, subsequent to filing the Cure Notice, the Debtor identifies additional executory contracts or unexpired leases that it wishes to add to or remove from the Cure Schedule (each an "Additional Contract"), the Debtor shall, as soon as practicable after making such a determination, send a supplemental Cure Notice (a "Additional Cure Notice") to the applicable Contract Counterparties to such Additional Contracts.

13.    ~~12.~~ Objections to a proposed Cure Amount with respect to any Potential Assumed/Assigned Contracts (a "Cure Objection") must be: (i) made in writing and filed on the docket for the Chapter 11 Case no later than _____**June 20**, **2025 at 5:00 p.m. (prevailing Eastern Time)**  (the "Contract Objection Deadline"); (ii) state the basis of such Cure Objection with specificity, including, without limitation, the Cure Amount alleged to be due to such Contract Counterparty, and include complete contact information for such Contract Counterparty (including address, telephone number, and email address); (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iv) be served on the Notice Parties, so as to be actually received by them on or before the Contract Objection Deadline.

14.    ~~13.~~ Any Contract Counterparty that fails to file a Cure Objection by the Contract Objection Deadline in accordance with the Contract and Lease Procedures: (i) shall be deemed to have forever waived and released any right to assert a Cure Objection and (ii) shall be forever barred and estopped from (a) objecting to the Cure Amount set forth on the Cure Schedule with respect to the Potential Assumed/Assigned Contract and (b) seeking additional amounts arising

6

under the Potential Assumed/Assigned Contract prior to the closing of the Sale, in each case unless otherwise ordered by the Court.

15.    14. Any Contract Counterparty that fails to file an Assignment Objection by the Contract Objection Deadline in accordance with the Contract and Lease Procedures: (i) shall be deemed to have forever waived and released any right to assert an Assignment Objection; (ii) shall be deemed to have consented to the assumption, assumption and assignment, or transfer, as the case may be, of its Potential Assumed/Assigned Contract without the necessity of obtaining any further order of the Court; and (iii) shall be forever barred and estopped from objecting to the assumption, assumption and assignment, or transfer, as the case may be, of its Potential Assumed/Assigned Contract, in each case unless otherwise ordered by the Court.

16.    15. Any Contract Counterparty that fails to file an Additional Contract Objection by the Additional Contract Objection Deadline in accordance with the Contract and Lease Procedures: (i) shall be deemed to have forever waived and released any right to assert an Cure Objection or Assignment Objection; (ii) shall be deemed to have consented to the assumption, assumption and assignment, or transfer, as the case may be, of their Potential Assumed/Assigned Contract without the necessity of obtaining any further order of the Bankruptcy Court; and (iii) shall be forever barred and estopped from (a) objecting to the Cure Amount set forth in an Additional Contract Notice with respect to the Potential Assumed/Assigned Contract and (b) seeking additional amounts arising under the Potential Assumed/Assigned Contract prior to, during, or after the closing of the Sale, in each case unless otherwise ordered by the Court.

17.    16. On or before _____ June 26, 2025 (or as soon as practicable thereafter), the Debtor will file with the Court and serve on the Sale Notice Parties and on all Contract Counterparties to Transferred Contracts included in the Successful Bid(s), the Notice of

7

Successful Bidder. With respect to any Sale Transaction, a filed Notice of Successful Bidder shall include, as exhibits, (a) a copy of the Stalking Horse Purchase Agreement or the purchase agreement of the Successful Bidder, as applicable; and (b) a copy of the proposed Sale Order.[4]

18. ~~17.~~ Any Contract Counterparty to a Transferred Contract that objects to a Successful Bidder's provision of additional assurance of future performance (the "Adequate Assurance Objection") must file such Adequate Assurance Objection on or before ~~_____, 2025 at 5:00 p.m. (prevailing Eastern Time)~~ the Sale Hearing and serve such objection on the Notice Parties and the applicable Successful Bidder, or such objecting party may appear and argue at the Sale Hearing. To the extent the parties are unable to resolve an Adequate Assurance Objection, the Court will set a hearing, which may be at the Sale Hearing, on the Adequate Assurance Objection to determine whether terms of the Successful Bid are compliant with section 365 of the Bankruptcy Code in providing adequate assurance of future performance to the Contract Counterparty of the applicable Transferred Contract.

19. ~~18.~~ Following the conclusion of the Auction, the Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing or by filing a notice on the Court's docket. At the Sale Hearing, the Debtor shall present the Successful Bid(s) to the Court for approval.

20. ~~19.~~ The Debtor is hereby authorized to conduct the Sale(s) without the necessity of complying with any state or local transfer laws or requirements.

21. ~~20.~~ The Bid Procedures Notice substantially in the form attached to this Order as Exhibit 2 is approved in all respects. Other than with respect to the Notice of Successful Bidder,

---

[4] The Debtor may, in its discretion, serve a Notice of Successful Bidder by U.S. Mail without attached copies of a purchase agreement and/or proposed Sale Order; *provided, however*, that any such Notice of Successful Bidder must identify where parties receiving such notice may access such documents free of charge.

4936-1011-4863.8 82578.00002
4936-1011-4863.11 82578.00002

no other or further notice of the Bid Procedures, the Sale Hearing, relevant objection or other deadlines, or the Sale(s) is required.

22.    21. To be considered, any objection to the Sale(s) must: (a) comply with the Bankruptcy Rules and the Local Rules; (b) be made in writing and filed with the Court; and (c) be filed on or before **June 20**, **2025 at 5:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline").

23.    22. The Unless otherwise ordered by the Court, the failure of any objecting person or entity to timely file an objection prior to the Sale Objection Deadline shall be a bar to the assertion at the Sale Hearing or thereafter of any objection to the relief requested by the Debtor, or the consummation and performance of the Sale of the Assets to the Successful Bidder, including the transfer of the Assets free and clear of all Encumbrances (with the same to attach to the cash proceeds of the Sale to the same extent and with the same order of priority, validity, force, and effect which they previously had against the Assets, subject to the rights and defenses of the Debtor and the Debtor's estate with respect thereto), and the Debtor's assumption and assignment or transfer of the Transferred Contracts to the Successful Bidder.

24.    23. No Qualified Bidder or any other person or entity, other than the Stalking Horse Bidder (or an affiliate thereof), shall be entitled to any expense reimbursement, break-up fee, termination, or other similar fee or payment in connection with the Sale.

25.    24. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h) or 6006(d), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

4936-1011-4863.8 82578.00002
4936-1011-4863.11 82578.00002

26.    25.  The Debtor is authorized and empowered to execute and deliver such documents, and to take and perform all actions necessary to implement and effectuate the relief granted in this Order.

27.    26.  All persons and entities that participate in the Sale Process and/or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Bid Procedures, the Sale Process, and the Auction.

28.    27.  To the extent of any inconsistences between the Bid Procedures and this Order, this Order shall govern.

29.    28.  The Court shall retain jurisdiction over any matter or dispute arising from or relating to the Bid Procedures or this Order.

## EXHIBIT 1

**Bid Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SYNTHEGO CORPORATION,[1] | Case No. 25-10823 (MFW) |
| Debtor. | |

### PROCEDURES FOR SALE OF THE DEBTOR'S ASSETS

On May 5, 2025 (the "Petition Date"), the above-captioned debtor and debtor in possession (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is operating its business and managing its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[2]

On June [●], 2025, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order (the "Bid Procedures Order") authorizing the Debtor to, among other things, solicit offers for a Sale Transaction (as defined herein) through the process and procedures set forth below (the "Bid Procedures").

The Debtor seeks to consummate a transaction (a "Sale Transaction") for the sale of substantially all of the Debtor's assets (the "Assets") under section 363 and, as applicable, section 365, of the Bankruptcy Code to the extent certain criteria are satisfied as set forth in greater detail below. Any Sale Transaction will be subject to the approval of the Court. *A hearing by the Court on the approval of any Sale Transaction(s) is currently scheduled for* ~~June 27~~, 2025 at ~~:00~~ 2:00 p.m. *(Eastern Time) (the "Sale Hearing").*

### *Summary of Key Dates Established by Bid Procedures*

---

[1]   The Debtor's mailing address is 3696 Haven Avenue, Suite A, Redwood City, California, 94063, and the last four digits of the Debtor's federal tax identification number is 9518.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Motion for (I) An Order (A) Approving Bid Procedures for the Sale of the Debtor's Assets; (B) Approving Certain Bid Protections in Connection with the Debtor's Entry Into Any Potential Stalking Horse Agreements; (C) Scheduling the Auction and Sale Hearing; (D) Approving the Form and Manner of Notice Thereof; and (E) Granting Related Relief; and (II) An Order or Orders (A) Approving the Sale of the Debtor's Assets Free and Clear of All Encumbrances; and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. ●12] (the "Bid Procedures Motion").

| Date[3] | Event |
|---|---|
| ~~[P + 21], 2025 at 5:00 p.m.~~ | ~~Bid Procedures Motion Objection Deadline~~ |
| ~~[P + 30], 2025 at __:00 __.m.~~ | ~~Bid Procedures Hearing~~ |
| ~~[P + 35]~~June 6, 2025 | Deadline to File and Serve Cure Notice |
| ~~[P + 49]~~June 20, 2025 at 5:00 p.m. | Contract Objection Deadline (including any Cure Objection or Assumption/Assignment Objection)[4] |
| ~~[P + 49]~~June 20, 2025 at 5:00 p.m. | Deadline to Object to Sale |
| ~~[P + 50]~~June 24, 2025 at 5:00 p.m. | Deadline to Submit Qualified Bids |
| ~~[P + 51]~~June 25, 2025 | Deadline to Designate Qualified Bids and File Auction Notice |
| ~~[P + 52]~~June 26, 2025 at 10:00 a.m. | Sale Auction |
| ~~[P + 53], 2025 at 10:00 a.m.~~June 26, 2025 (or as soon as practicable thereafter) | Deadline to File Notice of Successful Bidder and Back-Up Bidder |
| ~~[P + 56], 2025 at 5:00 p.m.~~at Sale Hearing | Post-Auction Objection Deadline |
| ~~[P + 56], 2025 at 5:00 p.m.~~at Sale Hearing | Adequate Assurance Objection Deadline |
| ~~[P + 58]~~June 27, 2025 at ~~10:00 a~~2:00 p.m. | Sale Hearing |
| ~~[P + 70]~~July 18, 2025 | Deadline to Close Transaction |

## I.    BID PROCEDURES

### A.   General Sale Transaction Information
#### 1.    *Assets for Sale*

The Debtor is soliciting interest for the consummation of a Sale Transaction with respect to the Assets.  All of the Debtor's rights, title, and interest in and to the Assets shall be sold free

---

[3]   All times are prevailing Eastern time. The Debtor may extend the deadlines set forth herein, subject to the terms of the *Interim Order (I) Authorizing the Debtor to Obtain Post-Petition Secured Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling A Final Hearing, and (VII) Granting Related Relief* [Docket No. 42] (the "Interim DIP Order") or any final dip financing order that is entered in this chapter 11 case (the "Final DIP Order" and together with the Interim DIP Order, the "DIP Order") and the Stalking Horse Purchase Agreement.

[4]   Any Contract Counterparty whose executory contracts or unexpired leases are included in an Additional Cure Notice shall have until the later of the Contract Objection Deadline or seven (7) calendar days after the Debtor files and serves the Additional Cure Notice to file a Contract Objection.

4936-1011-4863.8 82578.00002
4936-1011-4863.11 82578.00002

and clear of any Encumbrances (as defined in the Bid Procedures Motion) on an "as is, where is" and "with all faults" basis and without representations, warranties or guarantees, express, implied or statutory, written or oral, of any kind, nature or description, by the Debtor, its affiliates or their respective representatives, except as otherwise provided in the applicable purchase agreement, to the maximum extent permitted by sections 363 and 365 of the Bankruptcy Code, with such Encumbrances to attach to the net proceeds of the applicable Sale Transaction with the same validity and priority as such Encumbrances applied against the respective the Assets purchased pursuant to these Bid Procedures.[5]

The Debtor, in its discretion, exercised in good faith and in consultation with the Consultation Parties,[6] will have the right to determine the highest or best value from the offers received.

**Further information on the Assets being offered for sale pursuant to these Bid Procedures is available upon request from the Debtor's investment banker, Raymond James (Attn: Geoffrey Richards (Geoffrey.Richards@RaymondJames.com) and Simon Wein (Simon.Wein@raymondjames.com); on the terms and conditions set forth below.**

### 2.    *Access to Due Diligence Materials*

To participate in the bidding process and receive due diligence information, including full access to the Debtor's electronic data room (the "Data Room") and additional non-public information regarding the Debtor (the "Diligence Materials"), parties interested in receiving due diligence information to participate in the bidding process (each, an "Interested Party") must deliver or have previously delivered to the Debtor, if determined to be necessary by the Debtor in its sole discretion, the Preliminary Bid Documents (as defined herein) to the following parties (the "Recipient Parties"):

(i)    counsel to the Debtor: (a) Fenwick & West, LLP, 902 Broadway, 18th Floor, New York, NY 10010, Attn: Ethan Skerry (eskerry@fenwick.com), and Brendan Montgomery (bmontgomery@fenwick.com); (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James E. O'Neill (joneill@pszjlaw.com); and (c) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I.

---

[5]    In connection with these Bid Procedures, Potential Bidders (as defined below) may also submit a bid to make an investment in the Debtor in connection with a chapter 11 plan (a "Chapter 11 Plan Bid").

[6]    The "Consultation Parties" are the official committee of unsecured creditors (the "Committee"), if any. For the avoidance of doubt, the Stalking Horse Bidder and its affiliates shall not be Consultation Parties, and the Debtor shall establish reasonable procedures to prevent such parties or their representatives from being privy to confidential information concerning the bids of other Bidders for the Assets for so long as the Stalking Horse Bidder or any other affiliate of the DIP Agent (as defined in the DIP Order) or other DIP Lenders remains a Bidder; provided, however, that if the Stalking Horse Bidder later withdraws such bid the DIP Agent shall immediately be treated as a Consultation Party and shall have any consent rights provided herein, as applicable for purposes of these Bid Procedures.

4936-1011-4863.8 82578.00002
4936-1011-4863.11 82578.00002

Grassgreen (dgrassgreen@pszjlaw.com) and Maxim B. Litvak (mlitvak@pszjlaw.com); and

(ii)     investment banker to the Debtor: Raymond James & Associates, Inc., 320 Park Avenue, New York, NY 10022; Attn: Geoffrey Richards (Geoffrey.Richards@RaymondJames.com) and Simon Wein (Simon.Wein@raymondjames.com).

The "Preliminary Bid Documents" that must be submitted to the Recipient Parties include: (a) an executed confidentiality agreement using the Debtor's form, as may be amended, on terms reasonably acceptable to the Debtor, to the extent not already executed (a "Confidentiality Agreement") and (b) a statement and/or other factual support demonstrating to the Debtor's satisfaction in the exercise of its reasonable business judgment that the Interested Party has a *bona fide* interest in purchasing all or any portion of the Assets. Any Interested Party who, in the Debtor's determination, qualifies for access to the Diligence Materials shall be deemed a "Potential Bidder." For the avoidance of doubt, the Stalking Horse Bidder (as defined herein) shall be a Potential Bidder and does not need to submit the Preliminary Bid Documents.

The Debtor will provide any Potential Bidder such due diligence access or additional information as the Debtor deems appropriate, which may include, without limitation, the right to withhold, restrict, or to delay providing any Diligence Materials to a Potential Bidder that the Debtor, in its reasonable discretion, determines are, among other things, business-sensitive, may risk unduly placing the Debtor at a competitive disadvantage, or are otherwise inappropriate for disclosure to such Potential Bidder at such time.

The Potential Bidder shall return or destroy any non-public information the Debtor or its advisors provided to the Potential Bidder in accordance with the terms of the confidentiality agreement executed by the Debtor and the Potential Bidder.

### 3.     *Due Diligence from Potential Bidders*

Each Interested Party, Potential Bidder, and Qualified Bidder (as defined herein) (each, a "Bidder" and, collectively, the "Bidders") shall comply with all requests for additional information and due diligence access by the Debtor or its advisors regarding such Bidder and its contemplated Sale Transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtor to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Debtor to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

### B.   Auction Qualification Process
### 1.     *Stalking Horse Bidder*

The Debtor has (i) designated Perceptive Credit Holdings III, LP, a Delaware limited partnership (or an affiliate thereof), as the stalking horse bidder (the "Stalking Horse Bidder"), whose Qualified Bid shall serve as the stalking horse bid ("Stalking Horse Bid"), and (ii) executed, subject to higher or otherwise better offers, that certain Asset Purchase Agreement

memorializing the proposed transaction set forth in the Stalking Horse Bid (the "<u>Stalking Horse Purchase Agreement</u>").

### 2. *Form of Asset Purchase Agreement*

A Potential Bidder must submit a proposed asset purchase agreement, similar in form and substance, as modified, to the Stalking Horse Purchase Agreement, accompanied by a comparison of the Potential Bidder's purchase agreement to the Stalking Horse Purchase Agreement.

### 3. *Designation as Qualified Bidder*

A "<u>Qualified Bidder</u>" is a Potential Bidder (or combination of Potential Bidders whose bids for the Assets constitute a Topping Bid (as defined herein)), that satisfies the Bid Conditions defined and as described below and otherwise satisfies the requirements of the Bid Procedures Order and the Bid Procedures set forth herein, and that the Debtor, after consultation with the Consultation Parties, determines is reasonably likely to submit a bona fide offer for all or any portion of the Assets and to be able to consummate a Sale Transaction (or Sale Transactions, as applicable) if selected as a Successful Bidder (as defined herein). For the avoidance of doubt, the Stalking Horse Bidder constitutes a Qualified Bidder.

The Debtor, after consultation with the Consultation Parties, shall determine and notify any Potential Bidder as to whether such Potential Bidder is a Qualified Bidder no later than [————]**June 25**, **2025**.

## C. **Bidding Process**

The Debtor and its advisors shall, after consultation with the Consultation Parties: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions hereof; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase all or any portion of the Assets, including the terms of any submitted asset purchase agreements.  The Debtor, in consultation with the Consultation Parties, shall have the right to adopt such other rules for the bidding process that are not inconsistent with the Bid Procedures Order, the DIP Order, or these Bid Procedures that will better promote the goals of such process.

### 1. *Bid Deadline*

***The Bid Deadline is [P + 50]June 24, 2025 at 5:00 p.m. (prevailing Eastern Time).***  On or before the Bid Deadline, a Qualified Bidder that desires to make a proposal, solicitation, or offer for a Sale Transaction (each, a "<u>Bid</u>") shall deliver written and electronic copies of its Bid to the Recipient Parties. The Debtor shall promptly provide copies of all Bids to counsel for the Consultation Parties.

Subject to consultation with the Consultation Parties, a Bid received after the Bid Deadline shall not constitute a Qualified Bid.

4936-1011-4863.8 82578.00002
4936-1011-4863.11 82578.00002

2.    *Qualified Bids*

To be eligible to participate in the Auction and to be eligible for consideration as a Qualified Bidder, a Potential Bidder must deliver a Bid, so as to be received by the Recipient Parties on or before the Bid Deadline, that meets the following requirements, as may be modified by the Debtor in its reasonable discretion (collectively, the "Bid Conditions"):

i.    Purpose and Identity of Assets to be Purchased.  Each Bidder must state that the Bid includes an offer by the Bidder to effectuate a Sale Transaction and identify with specificity which Assets are included in the Bid.

ii.    Good Faith Deposit.  Each Bid must be accompanied by a cash deposit (the "Good Faith Deposit") in the form of a wire transfer, certified check, or cash payable to the order of counsel pursuant to instructions to be provided by the Debtor equal to 10% of the Bidder's proposed Purchase Price (as defined herein), which will be held in a non-interest bearing escrow or trust account. For the avoidance of doubt, the Stalking Horse Bidder is not required to submit a Good Faith Deposit.

iii.    Purchase Price.  Each Bid must clearly set forth the cash purchase price (the "Cash Consideration") and identify any non-cash consideration included in such Bid (together with the Cash Consideration, the "Purchase Price" including, without limitation, which executory contracts and unexpired leases the Bidder expects the Debtor to assume and assign to the Bidder (the "Transferred Contracts") and which liabilities, if any, of the Debtor the Bidder is agreeing to assume (the "Assumed Liabilities"). The Purchase Price associated with each Bid may include only cash and/or other consideration acceptable to the Debtor after consultation with the Consultation Parties.  The cash component of any other Qualified Bid with respect to all or any portion of the Assets must be no less than an amount necessary to satisfy the ~~Termination Fee and~~ Expense Reimbursement, as defined in the Stalking Horse Purchase Agreement, and be a Topping Bid with respect to the applicable Assets.  In order for the Bid to qualify as a "Topping Bid," it must provide for consideration at Closing (as defined herein) that is, in the aggregate, equal to or in excess of the sum of: (i) the Stalking Horse Bid; (ii) the Expense Reimbursement; <u>and</u> (iii) ~~the Termination Fee; and (iv)~~ $500,000.

iv.    Binding and Irrevocable.  Each Bid must include a signed writing stating that it is binding and irrevocable until the selection of the Successful Bidder, provided that if such Bidder is selected as the Successful Bidder or the Back-Up Bidder, its offer shall remain irrevocable until the closing of the Sale with the Successful Bidder or, as applicable, the Back-Up Bidder (the "Closing").

v.    Contemplated Transaction Documents.  Other than for any Accepted Chapter 11 Plan Bid, each Bid must include an executed purchase agreement marked against the Stalking Horse Purchase Agreement with the Stalking Horse Bidder pursuant to which the Qualified Bidder proposes to effectuate the contemplated Sale

6

Transaction including: (i) a redlined copy of the purchase agreement marked to show all changes requested by the Qualified Bidder against the Stalking Horse Purchase Agreement; and (ii) any changes to any exhibits or schedules to the Stalking Horse Purchase Agreement (collectively, the "Contemplated Transaction Documents"). The terms and conditions of the Contemplated Transaction Documents must be, in the aggregate, not materially more burdensome to the Debtor than the provisions contained in the Stalking Horse Purchase Agreement with the Stalking Horse Bidder. A Bid must identify with particularity each and every condition to Closing and all Transferred Contracts pursuant to the Contemplated Transaction Documents. All Bids must provide that all Cure Amounts (as defined herein) will be paid by such Bidder. ***The Contemplated Transaction Documents must include a commitment to close by no later than [P + 70]July 18, 2025***. A Bid shall contain a detailed description of how the Potential Bidder intends to treat current employees of the Debtor.

vi. <u>Contingencies</u>. A Bid may not be conditioned on obtaining financing or any internal approval or on the outcome or completion of due diligence, but may be subject to the accuracy in all material respects at Closing of representations and warranties at or before Closing or the satisfaction in all material respects of customary representations and warranties for transactions of similar size and nature at or before Closing or the satisfaction in all material respects of customary conditions for transactions of similar size and nature at or before Closing. A Bid must disclose any governmental approvals identified by the Potential Bidder other than as set forth in the Contemplated Transaction Documents that may impact the evaluation of such Bid.

vii. <u>No Collusion</u>. Each Bid must include a representation that the Bidder has not engaged in any collusion with respect to its Bid submission (though Potential Bidders may be permitted to make joint bids with the prior written consent of the Debtor) and that the Bidder will not engage in any collusion with respect to any Bids, the Auction, or the Sale Process.

viii. <u>Authorization to Bid and Identity of Bidder</u>. Each Bid must include evidence of authorization and approval from such Potential Bidder's board of directors (or comparable governing body, or a statement as to why such approval is unnecessary) with respect to the submission, execution, delivery, and closing of the Contemplated Transaction Documents. A Bid must also fully disclose the identity of the entity that is submitting the Bid, including the identity of the ultimate beneficial owners of the Bidder and the identity of any person or entity providing debt or equity financing for the Bid.

ix. <u>Financing Sources</u>. Each Bid must include written evidence that demonstrates the Potential Bidder has the necessary financial ability to close the contemplated Sale Transaction and provide adequate assurance of future performance under all Transferred Contracts. Such information may include, *inter alia*, the following:

a.    the Potential Bidder's current financial statements (audited, if they exist);

b.    contact names, telephone numbers, and e-mail addresses for verification of financing sources;

c.    evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated Sale Transaction (including confirmation that the funding of such commitments is not subject to any contingency);

d.    proof by the Potential Bidder of its financial capacity to close its proposed Sale Transaction(s), which may include written representations of the Potential Bidder's financial wherewithal or financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring all or any portion of the Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtor; and

e.    any other form of financial disclosure of credit-quality support information acceptable to the Debtor demonstrating that such Potential Bidder has the ability to close the contemplated Sale Transaction.

x.    <u>Adequate Assurance of Future Performance</u>.  Each Bid must demonstrate, in the Debtor's reasonable business judgment, after consultation with the Consultation Parties, that the potential Bidder can provide adequate assurance of future performance to the applicable counterparty under all Transferred Contracts as required by section 365 of the Bankruptcy Code.

xi.    <u>No Fees Payable to Qualified Bidder</u>.  A Bidder (other than the Stalking Horse Bidder) may not request any break-up fee, termination fee, expense reimbursement, or any similar type of payment.  Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code relating in any way to the submission of its Bid, compliance with the Bid Procedures, or participation in the Sale Process.

xii.    <u>Payment of ~~the Termination Fee and~~ Expense Reimbursement</u>.  A Bid must allow for the payment of the ~~Termination Fee and~~ Expense Reimbursement to the Stalking Horse Bidder from the first proceeds of the cash portion of the Purchase Price of such Bid upon Closing.

xiii.    <u>Non-Reliance</u>.  A Bid must include an acknowledgement and representation of the Potential Bidder that it has had an opportunity to conduct any and all due diligence regarding the Assets (as applicable to its Bid) and Assumed Liabilities prior to making its Bid, that it has relied solely upon its own independent review,

8

investigation, and/or inspection of any documents and/or the Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or, as applicable, the physical condition of the Assets, the Assumed Liabilities, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Contemplated Transaction Documents.

xiv.    <u>As Is, Where Is</u>.  A Bid must include an acknowledgement and representation of the Potential Bidder that it understands that any Sale Transaction shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents, or its estate except to the extent set forth in the Stalking Horse Purchase Agreement or the purchase agreement of the Successful Bidder, as applicable.

A Bid received from a Potential Bidder shall constitute a "<u>Qualified Bid</u>" if the Debtor believes, after consultation with the Consultation Parties, that such Bid would be consummated if selected as the Successful Bid.  The Debtor shall have the right to reject any and all Bids that it believes, after consultation with the Consultation Parties, do not comply with the Bid Procedures.  In the event that any Potential Bidder is determined by the Debtor not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit. For the avoidance of doubt, the Stalking Horse Bid constitutes a Qualified Bid.

Subject to the terms of the DIP Order and section 363(k) of the Bankruptcy Code, persons or entities holding a perfected security interest in the Assets may seek to submit a credit bid on such Assets, to the extent permitted by applicable law, any other Court orders and the documentation governing the Debtor's secured debt. For the further avoidance of doubt, nothing herein shall impact any rights of the DIP Secured Parties or the Prepetition Secured Parties (each as defined in the DIP Order).

**D. <u>Auction</u>**

After the receipt and review of all Qualified Bids, the Debtor shall make a determination, after consultation with the Consultation Parties, whether to accept the highest or best Qualified Bid(s) for all or any portion of the Assets.

To the extent the Debtor receives Qualified Bids and determines to proceed to Auction, the Debtor, after consultation with the Consultation Parties, shall determine which Qualified Bid represents the then highest or otherwise best Bid for the Assets (the "<u>Baseline Bid</u>").  The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Successful Bid (as defined herein) shall take into account any factors the Debtor, after consultation with the Consultation Parties, reasonably deems relevant to the value of the Qualified Bid to its estate, including, *inter alia*: (a) the amount and nature of the consideration; (b) the certainty of closing; (c) the net economic effect of any changes to the value to be received by the Debtor's creditors from the proposed Sale Transaction; (d) the allocation of the Purchase Price between or among Assets; (e) tax consequences of such Qualified Bid; and (f) any other quantitative or qualitative criteria available to assess such Bid (collectively, the "<u>Bid Assessment</u>

9

Criteria"). The Baseline Bid must be not less than the Purchase Price of the Stalking Horse Bid *plus* (ii) the ~~Termination Fee *plus* (iii) the~~ Expense Reimbursement *plus* ~~(iv)~~ $500,000.

On or before ~~_____~~ *June 25, 2025*, the Debtor shall file a notice on the Court's docket (an "Auction Notice") providing notice of the location of the Auction.

Unless otherwise designated by the Debtor, after consultation with the Consultation Parties, the Auction shall commence at ***10:00 a.m. (Eastern Time) on*** ~~_____~~ ***June 26, 2025,*** at a location to be designated in the Auction Notice. In the Debtor's discretion, the Auction may be held by telephonic or video conference.

The Auction shall be conducted according to the following procedures:

### 1.    *Participation at the Auction*

Only the Stalking Horse Bidder(s) and Qualified Bidders that have submitted Qualified Bids are eligible to participate at the Auction. Only the authorized representatives and professional advisors of each of the Qualified Bidders, the Stalking Horse Bidder, the Debtor, the Consultation Parties, the United States Trustee for the District of Delaware, and creditors of the Debtor subject to the below notice requirement shall be permitted to attend the Auction.

Except as otherwise set forth herein, the Debtor, after consultation with the Consultation Parties may conduct the Auction in the manner it determines will result in the highest or best offer(s) for the Assets in accordance with the Bid Procedures.

In the event, after the conclusion of the Auction, that certain discrete Assets which are not included in the Successful Bid have not been sold (the "Unsold Assets"), the Debtor may, in the exercise of its business judgment and after consultation with the Consultation Parties, resume an auction for the sale of the Unsold Assets, on such bid procedures as may be implemented by the Debtor after consultation with the Consultation Parties.

### 2.    *Observing Auction by Creditors*

Creditors of the Debtor that do not intend to bid at the Auction may attend and observe the auction so long as they confirm by email may that they plan to attend. Email should be sent to joneill@pszjlaw.com.

### 3.    *The Debtor Shall Conduct the Auction*

The Debtor and its professionals shall direct and preside over the Auction. At the start of the Auction, the Debtor shall describe the terms of the Baseline Bid. All Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtor reserves the right to conduct the Auction, after consultation with the Consultation Parties, in the manner designed to maximize value based upon the nature and extent of the Qualified Bids received in accordance with the Bid Procedures, the Bid Procedures Order, the Bankruptcy Code, and any other order of the Court entered in connection herewith and disclosed to each Qualified Bidder. The Debtor shall maintain a transcript of all Bids made and announced at the Auction,

including the Baseline Bid, all Overbids, and the Successful Bid. Pursuant to Local Rule 6004-1, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the Sale Process, the Bid Procedures, the Auction, or the proposed Sale Transaction.

### 4. *Terms of Overbids*

An "Overbid" is any bid made at the Auction by a Qualified Bidder subsequent to the Debtor's announcement of the applicable Baseline Bid(s) that satisfies the following conditions:

#### (a) **Minimum Increment**

During the Auction, bidding shall begin with the Baseline Bid. The Debtor reserves all rights with respect to the comparison of Qualified Bids to the Stalking Horse Bid and the determination of the Baseline Bid subject to the rights of the Consultation Parties as provided for herein. Any Overbid to the initial Baseline Bid at the start of the Auction (the "Initial Overbid") shall be in increments of no less than a value equal to an amount to be determined by the Debtor in an exercise of its business judgment, after consultation with the Consultation Parties (the "Minimum Increment"); *provided, however*, that to the extent that the Baseline Bid constitutes the Stalking Horse Bid, the bidding for such Assets at the first round of bidding will start at an amount equal to the sum of: (i) the value of the Baseline Bid, plus (ii) the amount of the ~~Termination Fee and~~ Expense Reimbursement, *plus* (iii) $500,000, in cash or other consideration acceptable to the Debtor, after consultation with the Consultation Parties. Any Overbids subsequent to the Initial Overbid shall be made in increments of the Minimum Increment; *provided, however*, that any Overbids by the Stalking Horse Bidder shall only be required to be equal to the sum of (x) (1) the Baseline Bid or the then existing highest Bid *plus* (2) the Minimum Increment *less* (y) the sum of the amount of the ~~Bid Protections applicable to the Assets included in the Bid~~Expense Reimbursement.

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtor, after consultation with the Consultation Parties, accepts a higher Qualified Bid as an Overbid.

#### (b) **Consideration of Overbids**

Subject to the terms of the DIP Order, the Debtor reserves the right, after consultation with the Consultation Parties, to make one or more adjournments in the Auction to, among other things: facilitate discussions between the Debtor and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor, in the exercise of its business judgment and after consultation with the Consultation Parties, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Sale Transaction at the prevailing Overbid amount.

4936-1011-4863.8 82578.00002
4936-1011-4863.11 82578.00002

(c)    **Evidence of Ability to Close Sale Transaction**

To the extent not previously provided on or before the Bid Deadline, a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, evidence reasonably acceptable to the Debtor, after consultation with the Consultation Parties, demonstrating such Qualified Bidder's ability to close the Sale Transaction proposed by such Overbid.

5.    ***Additional Procedures***

The Debtor, after consultation with the Consultation Parties, may (a) determine which Qualified Bid or Qualified Bids, if any, is the highest or best offer for all or any portion of the Assets, (b) reject at any time before entry of an order of the Court approving the Sale Transaction of the Assets pursuant to a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the Bid Procedures Order; or (iii) contrary to the best interest of the Debtor, its estate, and its creditors, (c) modify the Bid Procedures in response to the bidding activity at the Auction.

6.    ***Consent to Jurisdiction as Condition to Bidding***

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and to have waived any right to a jury trial in connection with any disputes relating to the Sale Process, the Auction, the Bid Procedures, and the construction and enforcement of each Qualified Bidder's Contemplated Transaction Documents, as applicable.

7.    ***Closing the Auction***

The Auction shall continue until there is only one Qualified Bid for all of the Assets that the Debtor determines, in the exercise of its business judgment and after consultation with the Consultation Parties, is the highest or otherwise best Qualified Bid (such Qualified Bid, the "Successful Bid", and such Qualified Bidder, the "Successful Bidder"), and that further bidding is unlikely to result in a higher or otherwise better Qualified Bid, at which point, the Auction will be closed.  The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction.  In selecting the Successful Bid, the Debtor, after consultation with the Consultation Parties, may consider all factors relevant to the sale of the Assets, including the Bid Assessment Criteria.

Upon the closing of the Auction, the Debtor, after consultation with the Consultation Parties, shall identify the Successful Bidder and the Successful Bid and the Back-Up Bidder and Back-Up Bid as soon as reasonably practicable which highest or best offer will provide the greatest amount of net value to the Debtor, and advise the Qualified Bidders of such determination.  Due to the potential combinations of Assets that may be included in any Bid, the Debtor reserves all rights with respect to the comparison of Qualified Bids and the determination of the Successful Bidder and Back-Up Bidder (as defined herein).

The Qualified Bidder with the second highest or otherwise best Bid at the Auction, as determined by the Debtor, after consultation with the Consultation Parties, shall be required to serve as the back-up bidder (the "Back-Up Bidder").  The identity of the Back-Up Bidder and the

amount and material terms of the final Bid of the Back-Up Bidder (the "Back-Up Bid") shall be announced by the Debtor at the conclusion of the Auction at the same time the Debtor announces the Successful Bid.  Any Back-Up Bidder shall keep its Back-Up Bid open and irrevocable until the Closing of the Sale Transaction with the Successful Bidder.  The Good Faith Deposit of the Back-Up Bidder shall be returned by the Debtor within three (3) days after Closing of the Successful Bid.

Within one (1) business day after the close of the Auction, (i) the Successful Bidder shall supplement the Successful Bidder's Good Faith Deposit such that the Good Faith Deposit shall be equal to an amount that is ten percent (10%) of the Purchase Price of the Successful Bid; and (ii) the Back-Up Bidder shall supplement the Back-Up Bidder's Good Faith Deposit such that the Good Faith Deposit shall be equal to an amount that is ten percent (10%) of the Purchase Price of the Back-Up Bid.

The Debtor shall not consider any Bids or Overbids submitted after the closing of the Auction and any and all such Bids and Overbids shall be deemed untimely.

As stated above, the Successful Bid of the Successful Bidder and the Back-Up Bid of the Back-Up Bidder, respectively, must be irrevocable until Closing.

### E.  **Notice of Acceptance of Successful Bid**

Upon determination of the Successful Bid and no later than ~~10:00 a.m. (ET) on _____ June 26,~~ **2025** (or as soon as practicable thereafter), the Debtor will file a notice (the "Notice of Successful Bidder") of the Debtor's intent to effectuate a Sale Transaction for the Assets with the Successful Bidder upon the approval of the Successful Bid by the Court at the Sale Hearing.[7]  The Debtor's presentation of a particular Successful Bid to the Court for approval does not constitute the Debtor's acceptance of such Successful Bid.  The Debtor will be deemed to have accepted a Successful Bid only when such Successful Bid has been approved by the Court at the Sale Hearing.

### F.  **Free of Any and All Interests**

Except as otherwise provided in the purchase agreement of the Successful Bidder and subject to the approval of the Court, all of the Debtor's rights, title, and interest in and to the Assets subject thereto shall be sold free and clear of any Encumbrances to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Encumbrances to attach to the proceeds of the sale of the applicable Assets with the same validity and priority as such Encumbrances were held against the applicable Assets prior to the sale.

---

[7]    With respect to any Sale Transaction, a filed Notice of Successful Bidder shall include, as exhibits, (a) a copy of the purchase agreement and (b) a copy of the proposed Sale Order.

### G.  Commissions

The Debtor shall be under no obligation to pay any commissions, fees, or expenses to any Potential Bidder's agent, advisor, or broker. All commissions, fees, or expenses for any such agents, advisors, or brokers shall be paid by the applicable Potential Bidder at such Potential Bidder's discretion. In no case shall any commissions, fees, or expenses for any Potential Bidder's agent, advisor, or broker be deducted from any proceeds derived from any Sale of the Assets. This paragraph shall not apply to ~~any bid protections~~the Expense Reimbursement that may become payable pursuant to the terms of the Stalking Horse Purchase Agreement.

### H.  Post-Auction Objection Deadline

The deadline to object to the conduct of the Auction and/or the particular terms of any proposed Sale Transaction in a Successful Bid, other than with respect to a Stalking Horse Bid is ~~_____, 2025 at 5:00 p.m. (prevailing Eastern Time)~~the Sale Hearing (the "Post-Auction Objection Deadline"). Any such objection must be filed and served so as to be received by the Notice Parties.

### I.  Sale Hearing

*The Sale Hearing will occur on* ~~*[P + 58]*~~*June 27*, *2025 at* ~~*__:00*~~*2:00 p.m. (prevailing Eastern Time)* before the Hon. _____Mary F. Walrath, United States Bankruptcy Court for the District of Delaware, via Zoom and at 824 North Market Street, ~~3rd~~5th Floor, Courtroom #4, Wilmington, Delaware 19801.  Any objections to the Sale Transaction(s) requested at the Sale Hearing must be filed and served so as to be received by the Notice Parties or before ~~*[P + 49]*~~*June 20*, *2025 at 5:00 p.m. (prevailing Eastern Time)*.

At the Sale Hearing, the Debtor will seek entry of an order (the "Sale Approval Order") authorizing and approving the Sale Transaction to the Successful Bidder.  Subject to the terms of any Cash Collateral Order, the Sale Hearing may be adjourned or rescheduled without notice or with limited and shortened notice to parties other than the Consultation Parties, including by (i) an announcement of such adjournment at the Sale Hearing or at the Auction or (ii) the filing of a notice of adjournment with the Court prior to the commencement of the Sale Hearing.

If any Successful Bidder fails to consummate an approved Sale Transaction in accordance with its applicable purchase agreement or such purchase agreement is terminated, the Debtor, after consultation with the Consultation Parties, shall be authorized, but not required, to deem the applicable Back-Up Bid, as disclosed at the Sale Hearing, as the Successful Bid, and the Debtor, after consultation with the Consultation Parties, shall be authorized, but not required, to consummate the sale with the Back-Up Bidder submitting the next highest Bid for any Assets without further order of the Court.

### J.  Return of Good Faith Deposit

The Good Faith Deposit of any Successful Bidder (or any Back-Up Bidder that becomes a Successful Bidder) shall be applied to the Purchase Price of such Sale Transaction at Closing. Counsel to the Debtor will hold the Good Faith Deposits of the Successful Bidder and the Back-Up Bidder in a segregated account until the Closing of the Sale Transaction with the

Successful Bidder. Good Faith Deposits of all other Qualified Bidders shall be held in a segregated account, and thereafter returned to the respective Bidders following the conclusion of the Auction. If a Successful Bidder (including any Back-Up Bidder that has become the Successful Bidder) fails to consummate an approved Sale Transaction because of a breach or failure to perform on the part of such Successful Bidder, the Debtor shall be entitled to retain such Successful Bidder's Good Faith Deposit as part of the Debtor's damages resulting from such Successful Bidder's breach or failure to perform, without prejudice to the Debtor's rights to seek additional damages from the Court as appropriate.

## K. Procedures Related to the Assumption and Assignment of Contracts and Leases

As part of a Sale Transaction, the Debtor may assume and assign certain of its executory contracts and unexpired leases (the "Potential Assumed/Assigned Contracts") to the Successful Bidder (*i.e.* the Transferred Contracts). The procedures governing the Debtor's identification of the Potential Assumed/Assigned Contracts and the non-Debtor counterparties' (the "Contract Counterparties") rights and obligations with respect to objecting to such identification, including to the assumability, assignability, or transferability of such Potential Assumed/Assigned Contracts and/or to the amounts the Debtor believes necessary to cure all monetary defaults under such Potential Assumed/Assigned Contracts pursuant to section 365 of the Bankruptcy Code, are governed by the Bid Procedures Order. **All Contract Counterparties should refer to the Bid Procedures Order, which provides for the following relevant dates and deadlines:**

| Date[8] | Event |
|---|---|
| [P + 35]June 6, 2025 | Deadline to File and Serve Cure Notice |
| [P + 49]June 20, 2025 at 5:00 p.m. | Contract Objection Deadline |

If a Contract Objection is timely filed by the Contract Objection Deadline and cannot be resolved, to the extent such Contract Objection relates to a Transferred Contract under a Sale Transaction contemplated by these Bid Procedures, a hearing will be held (i) at the Sale Hearing or (ii) on such other date subsequent to the Sale Hearing but before the Closing Date, as the Court may designate prior to, during, or after the Sale Hearing (the "Contract Hearing") before the Bankruptcy Court to consider the objection.

**For the avoidance of doubt, if no Contract Objections are filed or received with respect to any Potential Assumed/Assigned Contracts identified on the Cure Schedule in accordance with the Contract and Lease Procedures Order, then the Cure Amounts set forth in the Cure Schedule for such Potential Assumed/Assigned Contract will be binding upon the Contract Counterparty to such Potential Assumed/Assigned Contract for all purposes and will constitute a final determination of the Cure Amounts required to be paid by the Debtor in connection with the assumption and assignment of such Potential Assumed/Assigned Contract.**

Upon determination of the Successful Bid(s), **on or before 10:00 a.m. (ET) on [P + 53]June 26, 2025** (or as soon as practicable thereafter), the Debtor will file a Notice of

---

[8]    All times are prevailing Eastern time.

4936-1011-4863.8 82578.00002
4936-1011-4863.11 82578.00002

Successful Bidder with the Court. Any Contract Counterparty to a Transferred Contract seeking additional assurance of future performance than that provided by the Successful Bidder(s) (the "Adequate Assurance Objection") should immediately contact James E. O'Neill (joneill@pszjlaw.com) and the applicable Successful Bidder to attempt to resolve any Adequate Assurance Objection. **All Adequate Assurance Objections must be filed and served on the Notice Parties and the applicable Successful Bidder** ~~no later than _____, 2025 at 5:00 p.m. (prevailing Eastern Time)~~**by the Sale Hearing, or any objecting party may appear and argue at the Sale Hearing**. To the extent the parties are unable to consensually resolve the Adequate Assurance Objection prior to Closing, the Court will set a hearing, which may be at the Sale Hearing, on the Adequate Assurance Objection to determine whether terms of the Successful Bid are compliant with section 365 of the Bankruptcy Code in providing adequate assurance of future performance to the Contract Counterparty of the applicable Transferred Contract. The Debtor intends to cooperate with Contract Counterparties to Transferred Contracts to attempt to reconcile any Adequate Assurance Objection.

### L. Reservation of Rights

Subject to the terms of the DIP Order, the Debtor reserves its rights, subject to prior consultation with the Consultation Parties, to modify these Bid Procedures in its business judgment in any manner that will best promote the goals of these Bid Procedures or impose at or prior to the Auction, additional customary terms and conditions on a Sale Transaction, including, without limitation but in each case subject to the terms of the DIP Order and the Stalking Horse Purchase Agreement: (a) extending the deadlines set forth in these Bid Procedures; (b) adjourning the Auction at the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids (other than the Stalking Horse Bid).

### M. Fiduciary Duties

Notwithstanding anything to the contrary contained herein, nothing in the Bid Procedures will prevent the Debtor from exercising its fiduciary duties under applicable law.

### N. Conflicts

To the extent that any provision of these Bid Procedures conflicts with or is in any way inconsistent with any provision of the Stalking Horse Purchase Agreement while such agreement remains in full force and effect, the Stalking Horse Purchase Agreement shall govern and control.

## II. NOTICE PARTIES

As used herein, the "Notice Parties" are:

i.  counsel for the Debtor, (a) Fenwick & West, LLP, 902 Broadway, 18th Floor, New York, NY 10010, Attn: Ethan Skerry (eskerry@fenwick.com), and Brendan Montgomery (bmontgomery@fenwick.com); (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James E. O'Neill (joneill@pszjlaw.com); and (c) Pachulski Stang Ziehl

& Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com) and Maxim B. Litvak (mlitvak@pszjlaw.com);

ii. counsel to the Stalking Horse Bidder, (a) Morrison & Foerster LLP, 250 West 55th Street, Floor 20, New York, NY 10019, Attn: James A. Newton, Esq. (jnewton@mofo.com) and Miranda K. Russell, Esq. (mrussell@mofo.com); and (b) Potter Anderson & Corroon LLP, Attn: Christopher M. Samis (csamis@potteranderson.com) and Brett M. Haywood (bhaywood@potteranderson.com);

iii. counsel to the Committee, if any; and

iv. the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: ~~Jonathan W. Lipshie, Esq. (Jon.Lipshie~~Megan Seliber (megan.seliber@usdoj.gov).

~~4936-1011-4863.8 82578.00002~~
4936-1011-4863.11 82578.00002

## EXHIBIT 2

**Bid Procedures Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SYNTHEGO CORPORATION,[1] | Case No. 25-10823 (MFW) |
| Debtor. | |

**NOTICE OF PROPOSED SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, FREE AND CLEAR OF ALL ENCUMBRANCES, OTHER THAN ASSUMED LIABILITIES, AND SCHEDULING FINAL SALE HEARING RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On May 5, 2025, the above-captioned debtor and debtor in possession (the "Debtor") filed a motion (the "Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") seeking entry of (i) an order (the "Bid Procedures Order") (a) approving bid procedures for the sale or sales (the "Sale") of substantially all of the Debtor's assets (the "Assets"), (b) scheduling the Auction and Sale Hearing,[2] (c) approving the proposed ~~termination fee and~~ expense reimbursement in favor of the Stalking Horse Bidder, and (d) granting related relief (clauses (a) through (d), collectively, the "Bid Procedures Relief"), and (ii) an order (the "Sale Order") (a) authorizing the Sale of the Assets free and clear of all Encumbrances (as defined in the Motion), other than assumed liabilities, to the Stalking Horse Bidder or other Successful Bidder submitting the highest or otherwise best bid, (b) authorizing the assumption and assignment of the identified executory contracts and unexpired leases (the "Transferred Contracts"), and (c) granting certain related relief.

**I.      Bid Procedures and Stalking Horse Bidder**

On June [●], 2025, the Bankruptcy Court entered the Bid Procedures Order [Docket No. ●], thereby approving the Bid Procedures Relief.

In order for a Potential Bidder to be eligible to participate in the Auction as a Qualified Bidder, **it must comply with the Bid Procedures, and deliver its Bid, so as to be received on or before ~~_____~~ June 24, 2025 at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline")**, to: (a) investment banker to the Debtor: Raymond James & Associates, Inc., 320 Park Avenue, New York, NY 10022; Attn: Geoffrey Richards (Geoffrey.Richards@RaymondJames.com) and Simon Wein (Simon.Wein@raymondjames.com); and (b) counsel to the Debtor: (i) Fenwick & West, LLP,

---

[1]     The Debtor's mailing address is 3696 Haven Avenue, Suite A, Redwood City, California, 94063, and the last four digits of the Debtor's federal tax identification number is 9518.

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to it in the Bid Procedures and Bid Procedures Order, as applicable.

~~4936-1011-4863.8 82578.00002~~ 4936-1011-4863.11 82578.00002

902 Broadway, 18th Floor, New York, NY 10010, Attn: Ethan Skerry (eskerry@fenwick.com), and Brendan Montgomery (bmontgomery@fenwick.com); (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James E. O'Neill (joneill@pszjlaw.com); and (iii) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com) and Maxim B. Litvak (mlitvak@pszjlaw.com).

To receive copies of the (i) Sale Motion, any exhibits to the Sale Motion, and/or a confidentiality agreement to become a Potential Bidder (as defined below), or (ii) a copy of the Stalking Horse Purchase Agreement, as applicable, please submit a request by email to: the Debtor's investment banker, Raymond James & Associates, Inc., 320 Park Avenue, New York, NY 10022; Attn: Geoffrey Richards (Geoffrey.Richards@RaymondJames.com) and Simon Wein (Simon.Wein@raymondjames.com). Additionally, the Sale Motion and the exhibits thereto are available from the Debtor's claims and noticing agent's website at https://~~_____/Synthego~~dm.epiq11.com/case/synthego/info.

In order for Interested Parties to obtain access to the Debtor's data room, each Interested Party must first sign and deliver a confidentiality agreement to the Debtor and provide certain financial data, which financial data must be acceptable to the Debtor after consultation with the Consultation Parties. Please refer to the Bid Procedures for further information concerning submitting a Qualified Bid to participate at the Auction.

## II.    Sale Hearing and Closing

The Sale Hearing is scheduled for ~~_____~~**June 27**, 2025 at ~~_:00~~ **2:00 p.**m. **(prevailing Eastern Time)** **via Zoom and** at the United States Bankruptcy Court for the District of Delaware, United States Courthouse, 824 Market Street North, ~~3rd~~5th Floor, Courtroom #4, Wilmington, DE 19801, before the Honorable ~~_____~~Mary F. Walrath, United States Bankruptcy Judge. The Sale Hearing is being held to approve the highest or otherwise best offer(s) received for the Assets at the Auction, which, if any, will take place on ~~_____~~**June 26**, **2025, commencing at 10:00 a.m. (prevailing Eastern Time)**, at a location to be determined by the Debtor. The Sale Hearing may be adjourned or rescheduled with prior notice filed on the docket of this Chapter 11 Case or without prior notice by an announcement of the adjourned date at the Sale Hearing.

**THE DEADLINE TO OBJECT TO THE DEBTOR'S REQUEST TO APPROVE THE SALE OF THE PURCHASED ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES TO THE SUCCESSFUL BIDDER(S) (EACH, A "<u>SALE OBJECTION</u>") IS ~~_____~~JUNE 20, 2025 at 5:00 P.M. (PREVAILING EASTERN TIME) (THE "<u>SALE OBJECTION DEADLINE</u>").**

Any person or entity wishing to submit a Sale Objection must do so in writing and state with particularity the grounds for such objections or other statements of position. All Sale Objections shall be served so as to be actually received by no later than the Sale Objection Deadline by the following (collectively, the "<u>Notice Parties</u>"):

v.  counsel for the Debtor, (a) Fenwick & West, LLP, 902 Broadway, 18th Floor, New York, NY 10010, Attn: Ethan Skerry (eskerry@fenwick.com), and Brendan Montgomery (bmontgomery@fenwick.com); (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James E. O'Neill (joneill@pszjlaw.com); and (c) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com) and Maxim B. Litvak (mlitvak@pszjlaw.com);

vi. counsel to the Stalking Horse Bidder, (a) Morrison & Foerster LLP, 250 West 55th Street, Floor 20, New York, NY 10019, Attn: James A. Newton, Esq. (jnewton@mofo.com) and Miranda K. Russell, Esq. (mrussell@mofo.com);  and (b) Potter Anderson & Corroon LLP, Attn: Christopher M. Samis (csamis@potteranderson.com) and Brett M. Haywood (bhaywood@potteranderson.com);

vii. counsel to the Committee, if any; and

viii.  the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: ~~Jonathan W. Lipshie, Esq. (Jon.Lipshie~~Megan Seliber (megan.seliber@usdoj.gov).

The failure of any person or entity to file and serve a Sale Objection on or before the Sale Objection Deadline, as applicable, (i) shall be deemed a consent to the Sale to the Stalking Horse Bidder or other Successful Bidder and the other relief requested in the Motion, and (ii) shall be a bar to the assertion of any objection the sale of the Assets to the Stalking Horse Bidder or other Successful Bidder (including in any such case, without limitation, the transfer of the Assets free and clear of all Encumbrances, other than the assumed liabilities).

## III.    The Debtor's Contracts and Leases

The Sale Order, if approved, shall authorize the assumption and assignment or transfer of the Transferred Contracts to the Stalking Horse Bidder or other Successful Bidder.  In accordance with the Bid Procedures Order, notices setting forth the specific Potential Assumed/Assigned Contracts that may be assumed by the Debtor and assigned to the Stalking Horse Bidder or other Successful Bidder, or sold and transferred to the Stalking Horse Bidder or other Successful Bidder, and the proposed Cure Amounts for such Potential Assumed/Assigned Contracts will be given to all Contract Counterparties to the Potential Assumed/Assigned Contracts.  Such counterparties will be given the opportunity to object to the assumption, assumption and assignment, or sale and transfer, of a Potential Assumed/Assigned Contract in connection with the Sale and the proposed Cure Amount.

**This notice is subject to the full terms and conditions of the Bid Procedures and the Bid Procedures Order, which shall control in the event of any conflict.  The Debtor encourages all persons to review such documents and all other Sale-related documents in their entirety and to consult an attorney if they have questions or want advice.**

Dated:  June ___, 2025                PACHULSKI STANG ZIEHL & JONES LLP

                                      /s/
                                      Debra I. Grassgreen (admitted *pro hac vice*)
                                      Maxim B. Litvak (admitted *pro hac vice*)
                                      Malhar S. Pagay (admitted *pro hac vice*)
                                      James E. O'Neill (DE Bar No. 4042)
                                      919 North Market Street, 17th Floor
                                      P.O. Box 8750
                                      Wilmington, Delaware 19899-8705
                                      Tel:  302-652-4100
                                      Fax: 302-652-4400
                                      Email:      dgrassgreen@pszjlaw.com
                                                  mlitvak@pszjlaw.com
                                                  mpagay@pszjlaw.com
                                                  joneill@pszjlaw.com

                                      *Proposed Counsel to the*
                                      *Debtor and Debtor in Possession*

**EXHIBIT 3**

**Cure Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| SYNTHEGO CORPORATION,[1] | Case No. 25-10823 (MFW) |
| Debtor. | |

## NOTICE OF POTENTIAL ASSUMPTION, ASSUMPTION AND ASSIGNMENT, OR TRANSFER OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On May 5, 2025 (the "<u>Petition Date</u>"), the above-captioned debtor and debtor in possession (the "<u>Debtor</u>") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). The Debtor is operating its business and managing its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.[2]

On ~~May~~June [●], 2025, the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") entered an order (the "<u>Bid Procedures Order</u>"[3]) authorizing the Debtor to establish procedures related to, among other things, the assumption, assumption and assignment, and/or transfer of executory contracts and unexpired leases in connection with a sale of substantially all of the Debtor's assets to be approved by the Court (the "<u>Contract and Lease Procedures</u>").

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU ARE A PARTY TO ONE OR MORE OF THE CONTRACTS OR LEASES REFERRED TO HEREIN.**

---

[1] The Debtor's mailing address is 3696 Haven Avenue, Suite A, Redwood City, California, 94063, and the last four digits of the Debtor's federal tax identification number is 9518.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Motion for (I) An Order (A) Authorizing Entry Into Asset Purchase Agreement With Respect to the Sale of Substantially All of the Debtor's Assets, (B) Approving Bid Procedures for the Sale of Substantially All of the Debtor's Assets, (C) Scheduling an Auction and Sale Hearing, (D) Approving the Form and Manner of Notice Thereof, (E) Approving Certain Termination Fee and Expense Reimbursement Provisions, and (F) Granting Related Relief; and (II) An Order (A) Approving the Sale of the Debtor's Assets Free and Clear of All Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. ●12] (the "<u>Bid Procedures Motion</u>") or Bid Procedures Order (defined below).

[3] *Order (A) Authorizing Entry Into Asset Purchase Agreement With Respect to the Sale of Substantially All of the Debtor's Assets, (B) Approving Bid Procedures for the Sale of Substantially All of the Debtor's Assets, (C) Scheduling an Auction and Sale Hearing, (D) Approving the Form and Manner of Notice Thereof, (E)*

~~4936-1011-4863.8 82578.00002~~4936-1011-4863.11 82578.00002

## POTENTIAL ASSUMED/ASSIGNED CONTRACTS[4]

Attached as <u>Schedule A</u> is a schedule of all Potential Assumed/Assigned Contracts (the "<u>Cure Schedule</u>") that <u>may</u> be assumed, assumed and assigned, and/or transferred, as applicable, by the Debtor in connection with the Sale, listing the counterparties to such contracts (the "<u>Contract Counterparties</u>") and the amount, if any, proposed to be paid to cure any monetary defaults under the Potential Assumed/Assigned Contracts pursuant to section 365 of the Bankruptcy Code (the "<u>Cure Amounts</u>").[5]  **The inclusion of a document on the Cure Schedule is not a commitment that such Potential Assumed/Assigned Contract will, in fact, be assumed by the Debtor, assumed by the Debtor and assigned to a third party, or otherwise transferred by the Debtor to a third party, including in connection with the Sale.  The identification of any executory contract or unexpired lease as one that, in connection with a Sale, will, in fact, be assumed by the Debtor, assumed by the Debtor and assigned to a third party, or otherwise transferred to a third party are governed by the Bid Procedures Order.**

IF YOU AGREE WITH THE ASSUMPTION, ASSUMPTION AND ASSIGNMENT, OR TRANSFER OF YOUR POTENTIAL ASSUMED/ASSIGNED CONTRACT(S) AND/OR PROPOSED CURE AMOUNTS LISTED IN **SCHEDULE A** WITH RESPECT TO YOUR POTENTIAL ASSUMED/ASSIGNED CONTRACT(S), YOU ARE NOT REQUIRED TO TAKE ANY FURTHER ACTION.

IF YOU DISAGREE WITH THE ASSUMPTION, ASSUMPTION AND ASSIGNMENT, OR TRANSFER OF YOUR POTENTIAL ASSUMED/ASSIGNED CONTRACT(S) AND/OR THE PROPOSED CURE AMOUNTS LISTED IN **SCHEDULE A** WITH RESPECT TO YOUR POTENTIAL ASSUMED/ASSIGNED CONTRACT(S), YOU MUST OBJECT ~~TO THE PROPOSED CURE AMOUNTS~~BY NO LATER THAN ~~——————~~**JUNE 20,** 2025 AT 5:00 P.M. (PREVAILING EASTERN TIME) (the "<u>Contract Objection Deadline</u>").

Objections ~~to a proposed Cure Amount~~ with respect to any Potential Assumed/Assigned Contracts (a "<u>~~Cure~~Contract Objection</u>") must be: (i) made in writing and filed on the docket for the Chapter 11 Case no later than the Contract Objection Deadline; (ii) state the basis of such ~~Cure~~Contract Objection with specificity, including, without limitation, the Cure Amount alleged to be due to such Contract Counterparty, and include complete contact information for such Contract Counterparty (including address, telephone number, and email address); (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iv) be served on the following, so as to be actually received by them on or before the Contract Objection Deadline (collectively, the "<u>Notice Parties</u>"):

---

*Approving Certain Termination Fee and Expense Reimbursement Provisions, and (F) Granting Related Relief* [Docket No. ●] (the "*Bid Procedures Order*").

[4]   The presence of any contract or lease on ~~Exhibit~~Schedule A hereto does not constitute an admission that such contract or lease is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code or that such contract or lease will be assumed and/or assigned by the Debtor.

[5]   For avoidance of doubt, the Debtor reserves all rights to remove any executory contract or unexpired lease from the Cure Schedule prior to closing of any ~~Restructuring Transaction(s)~~sale.

i.  counsel for the Debtor, (a) Fenwick & West, LLP, 902 Broadway, 18th Floor, New York, NY 10010, Attn: Ethan Skerry (eskerry@fenwick.com), and Brendan Montgomery (bmontgomery@fenwick.com); (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: James E. O'Neill (joneill@pszjlaw.com); and (c) Pachulski Stang Ziehl & Jones LLP, One Sansome Street, Suite 3430, San Francisco, CA 94104, Attn: Debra I. Grassgreen (dgrassgreen@pszjlaw.com) and Maxim B. Litvak (mlitvak@pszjlaw.com);

ii.  counsel to the Stalking Horse Bidder, (a) Morrison & Foerster LLP, 250 West 55th Street, Floor 20, New York, NY 10019, Attn: James A. Newton, Esq. (jnewton@mofo.com) and Miranda K. Russell, Esq. (mrussell@mofo.com); and (b) Potter Anderson & Corroon LLP, Attn: Christopher M. Samis (csamis@potteranderson.com) and Brett M. Haywood (bhaywood@potteranderson.com);

iii.  counsel to the Committee, if any; and

iv.  the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: ~~Jonathan W. Lipshie, Esq. (Jon.Lipshie~~Megan Seliber (megan.seliber@usdoj.gov).

Any ~~other objections to the assumption, assumption and assignment, or transfer of any of the Potential Assumed/Assigned Contracts (an "Assumption/Assignment Objection") (other than on the basis of the Cure Amount) must: (i) be made in writing and filed on the docket for the Chapter 11 Case no later than _____, 2025 at 5:00 p.m. (prevailing Eastern Time) (*i.e.* the Contract Objection Deadline); (ii) state the basis of such Assignment Objection with specificity and include complete contact information for such Contract Counterparty (including address, telephone number, and email address); (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (iv) be served on the Notice Parties so as to be actually received by such parties on or before the Contract Objection Deadline~~Contract Counterparty that objects to a Successful Bidder's provision of additional assurance of future performance (the "Adequate Assurance Objection") must file such Adequate Assurance Objection on or before the Sale Hearing and serve such objection on the Notice Parties and the applicable Successful Bidder, or such objecting party may appear and argue at the Sale Hearing.  To the extent the parties are unable to resolve an Adequate Assurance Objection, the Court will set a hearing, which may be at the Sale Hearing, on the Adequate Assurance Objection to determine whether terms of the Successful Bid are compliant with section 365 of the Bankruptcy Code in providing adequate assurance of future performance to the Contract Counterparty of the applicable contract or lease.

If you file a Cure Objection or Assumption/Assignment Objection satisfying the requirements herein, the Debtor will confer with you in good faith to attempt to resolve any such Cure Objection or Assumption/Assignment Objection without Bankruptcy Court intervention.  If the applicable parties determine that the Cure Objection or Assumption/Assignment Objection cannot be resolved without judicial intervention in a timely manner, the Bankruptcy Court shall resolve such objections (i) at the Sale Hearing scheduled for ~~_____~~June 27, 2025 at ~~__~~:~~00~~

**2:00 p**.m. (prevailing Eastern Time) via Zoom and at the United States Bankruptcy Court for the District of Delaware, United States Courthouse, 824 Market Street North, ~~3rd~~5th Floor, Courtroom #4, Wilmington, DE 19801, before the Honorable ⸻Mary F. Walrath, United States Bankruptcy Judge, or (ii) on such other date subsequent to a Sale Hearing as the Court may designate prior to, during, or after the Sale Hearing (a "Contract Hearing") before the Bankruptcy Court to consider the objection.

If the Debtor identifies additional executory contracts or unexpired leases that it wishes to add to or remove from the Cure Schedule (each an "Additional Contract"), the Debtor shall, as soon as practicable after making such a determination, send an Additional Cure Notice to the applicable Contract Counterparties to such Additional Contracts. To the extent an executory contract or unexpired lease is not assumed, assumed and assigned, or transferred in connection with a Sale, the Debtor may, in its sole discretion, reject such an executory contract or unexpired lease to the extent permitted by law following the Closing.

Objections from any Contract Counterparty to an Additional Contract (an "Additional Contract Objection") must: (i) be made in writing and filed on the docket by the later of (a) the Contract Objection Deadline and (b) seven (7) calendar days after the Debtor files and serves the Additional Cure Notice (as applicable, the "Additional Contract Objection Deadline"); (ii) state the basis of such objection with specificity, including, without limitation, the Cure Amount alleged by such Contract Counterparty, and include contact information for such Contract Counterparty; (iii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; and (iv) be served upon the Notice Parties so as to be actually received by them on or before the Additional Contract Objection Deadline.

If a timely Additional Contract Objection is filed, and cannot be resolved consensually, the Bankruptcy Court shall resolve such Additional Potential Assignment Objection at a hearing to be held (i) on or before seven (7) calendar days from the timely filing of the Additional Potential Assignment Objection; (ii) at the Sale Hearing; or (iii) such other date designated by the Court.

**IF YOU FAIL TO TIMELY FILE AND PROPERLY SERVE A CURE OBJECTION OR ASSUMPTION/ASSIGNMENT OBJECTION AS PROVIDED HEREIN (I) YOU WILL BE DEEMED TO HAVE FOREVER WAIVED AND RELEASED ANY RIGHT TO ASSERT A CURE OBJECTION, ASSUMPTION/ASSIGNMENT OBJECTION, OR ADDITIONAL CONTRACT OBJECTION, AS APPLICABLE, AND TO HAVE OTHERWISE CONSENTED TO THE ASSUMPTION AND ASSIGNMENT, OR SALE AND TRANSFER, OF THE DEBTOR'S RIGHT, TITLE, AND INTEREST IN, TO AND UNDER, SUCH POTENTIAL ASSUMED/ASSIGNED CONTRACT OR ADDITIONAL CONTRACT, AS APPLICABLE, ON THE TERMS SET FORTH IN THIS CURE NOTICE AND THE APPLICABLE PURCHASE AGREEMENT, (II) YOU WILL HAVE CONSENTED TO THE ASSUMPTION, ASSUMPTION AND ASSIGNMENT OF, OR SALE AND TRANSFER OF, THE DEBTOR'S RIGHT, TITLE, AND INTEREST IN, TO AND UNDER, ITS POTENTIAL ASSUMED/ASSIGNED CONTRACT, AS THE CASE MAY BE, WITHOUT THE NECESSITY OF OBTAINING ANY FURTHER ORDER OF THE BANKRUPTCY COURT, AND (III) YOU WILL BE BARRED AND ESTOPPED**

**FOREVER FROM ASSERTING OR CLAIMING AGAINST ANY PARTY THAT ANY ADDITIONAL CURE AMOUNTS ARE DUE OR DEFAULTS EXIST, OR CONDITIONS TO ASSUMPTION, ASSUMPTION AND ASSIGNMENT, OR SALE AND TRANSFER, MUST BE SATISFIED, UNDER SUCH POTENTIAL ASSUMED/ASSIGNED CONTRACT.**

The Debtor's assumption, assumption and assignment, or sale and transfer, of a Potential Assumed/Assigned Contract is subject to approval by the Bankruptcy Court and consummation of the closing of a Sale.  The inclusion of any document on the list of Potential Assumed/Assigned Contracts shall not constitute or be deemed to be a determination or admission by the Debtor that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all rights with respect thereto are expressly reserved.

The dates set forth in this notice are subject to change, and further notice of such changes may not be provided except through announcements in open court and/or the filing of notices and/or amended agendas.  Parties in interest are encouraged to monitor the electronic court docket available at https://dm.epiq11.com/case/synthego/info.

This Notice is subject to the full terms and conditions of the Bid Procedures Order, which shall control in the event of any conflict.  The Debtor encourages parties in interest to review such documents in their entirety and consult an attorney if they have questions or want advice.

Dated:  June ___, 2025                  PACHULSKI STANG ZIEHL & JONES LLP

                                        */s/*
                                        Debra I. Grassgreen (admitted *pro hac vice*)
                                        Maxim B. Litvak (admitted *pro hac vice*)
                                        Malhar S. Pagay (admitted *pro hac vice*)
                                        James E. O'Neill (DE Bar No. 4042)
                                        919 North Market Street, 17th Floor
                                        P.O. Box 8750
                                        Wilmington, Delaware 19899-8705
                                        Tel:  302-652-4100
                                        Fax: 302-652-4400
                                        Email:      dgrassgreen@pszjlaw.com
                                                    mlitvak@pszjlaw.com
                                                    mpagay@pszjlaw.com
                                                    joneill@pszjlaw.com

                                        *Proposed Counsel to the*
                                        *Debtor and Debtor in Possession*

# SCHEDULE A

Schedule of Potential Assumed/Assigned Contracts

| No. | Contract Counterparty | Contract/Lease Title | Date of Contract/Lease | Cure Amount |
|-----|----------------------|----------------------|------------------------|-------------|
| 1. | [X] | [X] | [X] | $[X] |

**EXHIBIT B**

**Stalking Horse Purchase Agreement**

Document comparison by Workshare Compare on Wednesday, May 28, 2025 8:38:35 PM

| Input: | |
|---|---|
| Document 1 ID | netdocuments://4936-1011-4863/8 |
| Description | Synthego - Bid Pro Order & Sale Motion |
| Document 2 ID | netdocuments://4936-1011-4863/11 |
| Description | Synthego - Bid Pro Order & Sale Motion |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 188 |
| Deletions | 132 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 320 |