**<u>EXHIBIT B</u>**

**Redline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SYNTHEGO CORPORATION,[1] | Case No. 25-10823 (MFW) |
| Debtor. | **Related to Docket Nos. 11, 42, 73, 91, 98, 114, 115, 117** |

**FINAL ORDER (I) AUTHORIZING
THE DEBTOR TO OBTAIN POST-PETITION
SECURED FINANCING, (II) AUTHORIZING THE
USE OF CASH COLLATERAL, (III) GRANTING LIENS
AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS,
(IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING
THE AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF**

Upon the motion dated May 6, 2025 [Docket No. 11] (as amended on May 23, 2025 [Docket No. 73, the "**DIP Motion**"), of the above-captioned debtor and debtor-in-possession (the "**Debtor**") in the above-referenced chapter 11 case (the "**Chapter 11 Case**"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c), and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"); Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); and Rules 2002-1(b), 4001-2, 9006-1, and 9013-1 of the Local Bankruptcy Rules for the District of Delaware (the "**Local Rules**"), for entry of interim and final orders authorizing the Debtor to, among other things:

(i)   Obtain senior secured, superpriority, debtor-in-possession financing in the aggregate principal amount of up to $~~52,500,000~~25,000,000 (the "**DIP Facility**") pursuant to the terms and conditions of the DIP Credit Documents, the Interim Order, and this Final Order (each as defined below);

---

[1]   The Debtor's mailing address is 3696 Haven Avenue, Suite A, Redwood City, California, 94063, and the last four digits of the Debtor's federal tax identification number is 9518.

(ii)     Enter into and perform under the (a) Senior Secured Debtor-In-Possession Term Loan Credit Agreement (the "**DIP Credit Agreement**"), substantially in the form attached as Exhibit A to the Interim Order, by and among Synthego Corporation, as borrower, Perceptive Credit Holdings III, LP and each other lender from time to time party thereto (in such capacities, the "**DIP Lenders**"), and Perceptive Credit Holdings III, LP, as administrative agent for the DIP Lenders (in such capacity, the "**DIP Agent**," and, together with the DIP Lenders, the "**DIP Secured Parties**") and (b) all other documents, including, without limitation, security agreements or other collateral documents, executed or filed in connection therewith (together with the DIP Credit Agreement, the "**DIP Credit Documents**");

(iii)    Borrow, on an interim basis, pursuant to the DIP Credit Documents and the interim order (the "**Interim Order**") [Docket No. 42], post-petition <u>new money</u> financing in an aggregate principal amount of up to $5,000,000, plus the ~~Interim~~<u>DIP</u> Roll-Up Loans (as defined below) of $10,000,000 (collectively, the "**Initial DIP Loans**") and obtain other financial accommodations from the DIP Secured Parties pursuant to the DIP Credit Agreement, the other DIP Credit Documents, and the Interim Order;

(iv)    Borrow, on a final basis, pursuant to the DIP Credit Documents and this final order (the "**Final Order**"), up to five (5) borrowings of delayed draw post-petition <u>new money</u> financing in an aggregate principal amount of up to $10,000,000 (for a total of $15,000,000~~), plus the Final Roll-Up Loans (as defined below) of $27,500,000 (for a total of $37,500,000~~) (the "**Final DIP Loans**," and together with the Initial DIP Loans, the "**DIP Loans**") and obtain other financial accommodations from the DIP Secured Parties pursuant to the DIP Credit Agreement, the other DIP Credit Documents, and this Final Order;

(v)     Execute and deliver the DIP Credit Agreement and the other DIP Credit Documents;

(vi)    Grant to the DIP Secured Parties allowed super-priority administrative expense claims in the Chapter 11 Case and any Successor Case (as defined below) for the DIP Facility and all obligations of the Debtor owing under the DIP Credit Documents (collectively, the "**DIP Obligations**") subject to the priorities set forth herein;

(vii)   Grant to the DIP Secured Parties automatically perfected security interests in and liens on all of the DIP Collateral (as defined below), including all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code ("**Cash Collateral**"), which liens shall be subject to the priorities set forth herein;

(viii)  Use the proceeds of the DIP Facility in accordance with the DIP Credit Agreement, the DIP Credit Documents, and this Final Order, in all cases in accordance with the Approved Budget (as defined in the DIP Credit Agreement),

a copy of which was attached as Exhibit B to the Interim Order, and as otherwise provided in the DIP Credit Documents;

(ix)    Use any Prepetition Collateral (as defined below), including Cash Collateral, and provide adequate protection to the parties that may have an interest in such Prepetition Collateral, including Cash Collateral, for any "decrease in the value," as that term is used in section 361 of the Bankruptcy Code ("**Diminution in Value**") of their interests therein;

(x)    Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms of the DIP Credit Documents and this Final Order;

(xi)    waive the Debtor's ability to surcharge against any DIP Collateral or Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtor under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(xii)    Waive, to the extent applicable, any stay of the immediate effectiveness of this Final Order imposed by the Bankruptcy Code or the Bankruptcy Rules, such that this Final Order shall be immediately effective upon its entry on the docket of the United States Bankruptcy Court for the District of Delaware (the "**Court**"); and

(xiii)    Obtain such other and further relief as is just and proper.

The Court having considered the DIP Motion, the exhibits attached thereto, the *Declaration of Craig Christianson in Support of the Debtor's Chapter 11 Petition and First Day Relief* (the "**Christianson First Day Declaration**") and the *Declaration of Allen Soong in Support of the Debtor's Chapter 11 Petition and First Day Relief* (the "**Soong First Day Declaration**" and, together with the Christianson First Day Declaration, the "**First Day Declarations**"), and the evidence submitted or adduced and the arguments of counsel made at the hearing on the Interim Order held by the Court on May 8, 2025 (the "**Interim Hearing**") and the hearing on this Final Order held by the Court on June 3, 2025 (the "**Final Hearing**"); and notice of the DIP Motion and the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b)-(d), and 9014, and all applicable Local Rules; and the Final

Hearing having been held and concluded; and it appearing that granting the relief requested in the DIP Motion on a final basis is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors, and is essential for the preservation of the value of the Debtor's assets; and it appearing that the Debtor's entry into the DIP Credit Documents is a sound and prudent exercise of the Debtor's business judgment; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved, or overruled by the Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING, IT IS FOUND AND DETERMINED THAT:[2]**

A.   **Petition Date**.   On May 5, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code with this Court.

B.   **Debtor in Possession**.   The Debtor is authorized to continue operating its business and managing its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   No trustee, examiner, or official committee of unsecured creditors has been appointed in this Chapter 11 Case.   On May 16, 2025, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") filed a *Statement That Unsecured Creditors Committee Has Not Been Appointed* [Docket No. 68].

C.   **Jurisdiction and Venue**.   This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Venue for this Chapter 11 Case and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.   Consideration of the DIP Motion constitutes a core

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.   To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.   To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

proceeding under 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.

D.    **Notice**.  Notice of the Final Hearing and the DIP Motion have been provided by the Debtor to (i) the U.S. Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) the Debtor's thirty (30) largest unsecured creditors; (vi) counsel to the DIP Secured Parties and Prepetition Secured Parties; (vii) any party asserting a known lien in the Debtor's assets; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, such notice of the Final Hearing and the DIP Motion constitutes adequate and sufficient notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b)-(d), and 9014, and the Local Rules, and no other or further notice of the DIP Motion with respect to the relief requested at the Final Hearing or the entry of this Final Order shall be required.

E.    **Debtor's Stipulations**.    After consultation with its attorneys and financial advisors, and subject to and without prejudice to the rights of parties-in-interest as set forth in paragraph 12 herein, upon entry of the Interim Order and reaffirmed pursuant to this Final Order, the Debtor, on its behalf and on behalf of its estate, admits, stipulates, acknowledges, and agrees to the following (collectively, the "**Debtor's Stipulations**"):

(i)    *Prepetition Senior Secured Term Loan Facility*.  Pursuant to that certain Credit Agreement and Guaranty, dated January 24, 2022 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time), among Synthego Corporation, as borrower, the guarantors from time to time party thereto, the lenders from time to time party thereto (the "**Prepetition Lenders**"), and Perceptive Credit Holdings III, LP, as administrative

5

agent (the "**Prepetition Agent**," and together with the Prepetition Lenders, the "**Prepetition Secured Parties**") (such agreement, the "**Prepetition Credit Agreement**"), the Debtor incurred indebtedness to the Prepetition Secured Parties (such facility, the "**Prepetition Facility**").  As of the Petition Date, the aggregate principal amount outstanding under the Prepetition Facility was not less than $~~73,411,918.28~~73,937,415.50, plus interest, fees and all other obligations owing under the Prepetition Facility and as set forth in the Prepetition Credit Agreement and the other credit and security documents related thereto (such documents, collectively, the "**Prepetition Credit Documents**," and such obligations, collectively, the "**Prepetition Obligations**").

(ii)     *Prepetition Collateral*.  As set forth more fully in each of the Prepetition Credit Documents, prior to the Petition Date, the Debtor granted to the Prepetition Secured Parties first-priority liens (the "**Prepetition Liens**") on substantially all of the Debtor's assets, including, but not limited to, all accounts, chattel paper, commercial tort claims, deposit accounts, books and documents, equipment, general intangibles, inventory, investment property, letter-of-credit rights, goods, intellectual property, money, and all products and proceeds of the foregoing (collectively, the "**Prepetition Collateral**"), senior to all other prepetition liens except as expressly set forth in the Prepetition Credit Documents.

(iii)     *Validity, Perfection, and Priority of Prepetition Liens and Prepetition Obligations*.  The Debtor acknowledges that, as of the Petition Date, (a) the Prepetition Liens on the Prepetition Collateral were and continue to be valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Liens on the Prepetition Collateral were properly perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code); (c) the

Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens senior by operation of law (including any that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) (the "**Permitted Liens**"); (d) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor enforceable in accordance with the terms of the Prepetition Credit Documents; (e) no offsets, recoupments, challenges, objections, defenses, claims, deductions, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (f) the Debtor and its estate has no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against the Prepetition Secured Parties, or any of its or their affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Prepetition Obligations; (g) the Debtor waives, discharges, and releases any right to challenge any of the Prepetition Obligations or the Prepetition Liens, the priority of the Debtor's obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition Obligations; and (h) the Prepetition Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code, up to the value of the Debtor's assets secured by the Prepetition Liens.

(iv)    *Permitted Liens*.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Lien is valid, senior, enforceable, prior, perfected, or

7

non-avoidable relative to the Prepetition Liens. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtor to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Lien and/or security interests (other than the Prepetition Liens or the DIP Liens (as defined below)). For the purposes hereof, any alleged claim arising or asserted as a right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) is not a Permitted Lien. Any alleged claim arising or asserted as a right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the DIP Facility, DIP Liens, and DIP Collateral as such claims had with respect to the Prepetition Liens in the Prepetition Collateral and the DIP Collateral.

(v)     _Sale and Credit Bidding_. Any of the DIP Secured Parties or the Prepetition Secured Parties shall have the right to credit bid the entirety of (and any portion of) the Prepetition Obligations, the DIP Obligations, and/or the Adequate Protection Obligations as applicable, secured by their respective liens and security interests. For the avoidance of doubt, the DIP Roll-Up Loans and the Prepetition Obligations shall remain subject to the reservation of rights in paragraph 12 below notwithstanding any credit bid of the DIP Roll-Up Loans or the Prepetition Obligations.

(vi)     _Default of the Debtor._ As of and upon the Petition Date, events of default have occurred under the terms of the Prepetition Credit Agreement.

(vii)     _Limits on Lender Liability_. Nothing in the Interim Order, this Final Order, any of the DIP Credit Documents, any of the Prepetition Credit Documents, or any other documents related thereto, shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or the Prepetition Secured Parties of any liability

for any claims arising from any activities by the Debtor in the operation of its business or in connection with the administration of this Chapter 11 Case or any Successor Case. The DIP Secured Parties and the Prepetition Secured Parties shall not, solely by reason of having made loans under the DIP Facility or authorizing the use of Cash Collateral, be deemed in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute). Nothing in the Interim Order, this Final Order or the DIP Credit Documents shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtor.

(viii)    *Cash Collateral*. All of the Debtor's cash, including cash and other amounts on deposit or maintained in any account or accounts by the Debtor, whether subject to control agreements or otherwise, and any amount generated by the collection of accounts receivable or other disposition of the Prepetition Collateral, and the proceeds of any of the foregoing, whether existing on the Petition Date or thereafter, constitute Cash Collateral within the meaning of section 363(a) of the Bankruptcy Code and is Prepetition Collateral of the Prepetition Secured Parties.

F.    **Findings Regarding the DIP Facility**.

(i)    *Need for DIP Facility and to Use Cash Collateral*. A need exists for the Debtor to obtain funds from the Final DIP Loans and to use Cash Collateral in order to continue operations, fund payroll and operating expenses, and administer and preserve the value of its

estate during this Chapter 11 Case.  The ability of the Debtor to finance its operations through the incurrence of the Final DIP Loans and use of Cash Collateral is vital to the preservation and maintenance of the going concern value of the Debtor's estate, to maximize the value of the Debtor's assets for the benefit of its creditors, and to avoid immediate and irreparable harm to the Debtor, its estate, and its creditors.

(ii)     _No Credit Available on More Favorable Terms_.  The Debtor has been unable to obtain (a) unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense or (b) credit for money borrowed secured by a lien on property of its estate on more favorable terms and conditions than those provided in the DIP Credit Agreement and this Final Order.  The Debtor is unable to obtain credit for borrowed money without granting to the DIP Secured Parties the DIP Protections (as defined below).

G.     **Adequate Protection**.  The Prepetition Secured Parties are entitled to receive adequate protection to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral.  Pursuant to sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection, the Prepetition Secured Parties will receive (i) adequate protection liens and superpriority claims, as more fully set forth in paragraph 8 herein; and (ii) periodic payments and payment of reasonable and documented legal fees and out-of-pocket expenses arising before and after the Petition Date, as more fully set forth in paragraphs 2(a) and 8(e) herein; provided that nothing in the DIP Documents or herein shall (x) be construed as a consent by any of the Prepetition Secured Parties to or authorization by the Court of the use of Cash Collateral other than on the terms set forth in this Final Order and in the context of the DIP Facility authorized by this Final Order to the extent such consent has been given or (y) prejudice, limit, or otherwise

impair the rights of any of the Prepetition Secured Parties to seek new, different, or additional adequate protection or assert any rights of the Prepetition Secured Parties.

H.      **Sections 506(c) and 552(b)**.  The Debtor shall be deemed to have waived the provisions of section 506(c) of the Bankruptcy Code and any "equities of the case" exception under section 552(b) of the Bankruptcy Code as part of the DIP Facility.  Further, no expenses of administration of this Chapter 11 Case or any other proceedings superseding or related to the foregoing, including any subsequent chapter 7 case ("**Successor Case**") shall be charged against or recovered from the DIP Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code, the enhancement of collateral provisions of section 552 of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) or any similar principle of law, without the prior written consent of the DIP Agent or Prepetition Agent, as applicable, and no consent shall be implied from any action, inaction, or acquiescence by the DIP Secured Parties or Prepetition Secured Parties, as applicable.  The foregoing is a condition and a material inducement to the Prepetition Secured Parties' consent to the use of Cash Collateral.

I.      **Use of Proceeds of the DIP Facility**.  Proceeds of the DIP Facility (net of any amounts used to pay fees, costs, and expenses under the DIP Credit Documents) shall be used in a manner consistent with the terms and conditions of the DIP Credit Agreement, the Interim Order, and this Final Order and in accordance with the Approved Budget.

J.      **Application of Proceeds of DIP Collateral**.  All proceeds of any sale or other disposition of the DIP Collateral (as defined below) shall be applied in accordance with the Approved Budget and the terms and conditions of the DIP Credit Documents, the Interim Order, and this Final Order.

K.    **Roll-Up of Prepetition Obligations**.    Upon entry of the Interim Order, $10,000,000 of the outstanding Prepetition Obligations constituted DIP Obligations under and as further described in the DIP Credit Agreement (the "~~Interim Roll-Up Loans~~").  ~~Upon entry of this Final Order, without any further action by the Debtor or any other party, $27,500,000 of the remaining outstanding Prepetition Obligations shall constitute DIP Obligations under and as further described in the DIP Credit Agreement (the "Final Roll-Up Loans" and together with the Interim Roll-Up Loans,~~ the "**DIP Roll-Up Loans**").  By virtue of the Interim Order and this Final Order, the aggregate total of the DIP Roll-Up Loans is $~~37,500,000~~10,000,000.  The replacement and refinancing (or "roll-up") of the DIP Roll-Up Loans shall be authorized as compensation for, in consideration for, and solely on account of the agreement of the DIP Lenders to fund amounts and provide other consideration to the Debtor under the DIP Facility and not as payments under, adequate protection for, or otherwise on account of, any Prepetition Obligations.  The Prepetition Secured Parties would not otherwise consent to the use of the Prepetition Collateral, and the DIP Lenders would not be willing to provide the DIP Facility or extend credit to the Debtor thereunder without the inclusion of ~~(i)~~ the ~~Interim~~DIP Roll-Up Loans~~,~~ upon entry of the Interim ~~Order, and (ii) the Final Roll-Up Loans, upon entry of this Final~~ Order. Moreover, the replacement and refinancing of the DIP Roll-Up Loans into DIP Obligations will enable the Debtor to obtain urgently needed financing to administer this Chapter 11 Case and fund its operations.  Because the DIP Roll-Up Loans are subject to the reservation of rights in paragraph 12 below, they do not prejudice the right of any other party in interest.

L.    **Effect of Reversal, Good Faith**.    The DIP Secured Parties have indicated a willingness to provide financing to the Debtor in accordance with the DIP Credit Agreement, the Interim Order, and this Final Order, and provided that the DIP Obligations, DIP Liens, and other

protections granted by the Interim Order, this Final Order, and the DIP Credit Documents will not be affected by any subsequent reversal or modification of this Final Order as provided in section 364(e) of the Bankruptcy Code.  Based upon the First Day Declarations, and the record at the Interim Hearing, the DIP Secured Parties have acted in good faith in connection with negotiating the DIP Credit Documents and agreeing to provide the DIP Facility approved by the Interim Order and reaffirmed by this Final Order, and the DIP Secured Parties' claims, superpriority claims, security interests, and liens and other protections granted pursuant to the Interim Order, this Final Order, and the DIP Credit Documents will have the protections provided by section 364(e) of the Bankruptcy Code.  Accordingly, the DIP Secured Parties' claims, superpriority claims, replacement liens, and other protections granted pursuant to this Final Order will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of this Final Order or any other order, solely to the extent such claims, superpriority claims, replacement liens, and other protections exist as of the date of any such subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration.

M.    **Business Judgment and Good Faith Pursuant to Section 364(e)**.  Based upon the First Day Declarations, and the record at the Final Hearing:

(i)    The terms and conditions of the DIP Facility and the DIP Credit Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration;

(ii)    The DIP Credit Documents and use of Cash Collateral were negotiated in good faith and at arm's length between the Debtor and the DIP Secured Parties; and

13

(iii)     The proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Secured Parties are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

N.     **Findings Regarding Corporate Authority**.    The Debtor has all requisite corporate authority to execute and deliver the DIP Credit Documents to which it is a party and to perform its obligations thereunder.

O.     **Relief Essential; Best Interest; Good Cause for Immediate Entry**.  Good cause has been shown for the relief requested in the DIP Motion (and as provided in the Interim Order and reaffirmed by this Final Order) and such relief is necessary, essential, and appropriate for the preservation of the Debtor's assets, business, and property.  It is in the best interest of the Debtor's estate to be allowed to enter into the DIP Facility contemplated by the DIP Credit Agreement.  Accordingly, this Court finds that entry of this Final Order is necessary to avoid immediate and irreparable harm to the Debtor's estate, is critical to the Debtor's ability to maximize the value of its estate, is in the best interests of the Debtor's estate, and is necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of its assets and properties.

**NOW, THEREFORE**, based upon the foregoing findings, and upon consideration of the DIP Motion and the record made before this Court with respect to the DIP Motion, including the record created during the Final Hearing, and with the consent of the Debtor, the DIP Agent, and the Prepetition Secured Parties to the form and entry of this Final Order, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.     **Motion Granted**.  The DIP Motion is granted in accordance with the terms and conditions set forth in this Final Order and the DIP Credit Agreement.  Any objections to the DIP Motion with respect to entry of this Final Order to the extent not withdrawn, waived, or otherwise resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits.  The use of Cash Collateral (as defined herein) on a final basis is authorized, subject to the terms of this Final Order.

2.     **DIP Credit Documents**.

(a)     **Approval of Entry into and Performance Under the DIP Credit Documents**.  The DIP Facility up to the aggregate principal amount of $~~52,500,000~~25,000,000, including, without limitation, the DIP Roll-Up Loans up to the aggregate principal amount of $~~37,500,000~~10,000,000, plus the Closing Fee and Exit Fee (each as defined in the DIP Credit Agreement), is hereby approved.  The Debtor is authorized and empowered to execute and deliver the DIP Credit Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of the Interim Order, this Final Order and the DIP Credit Documents, to execute and deliver all instruments and documents that may be required or necessary for the performance by the Debtor under the DIP Credit Documents and the creation and perfection of the DIP Liens described in and provided for by the Interim Order, this Final Order and the DIP Credit Documents, and to take such further acts as may be necessary.  The Debtor is hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses, indemnities, and other amounts described in the DIP Credit Agreement and all other DIP Credit Documents as such become due, including, without limitation, reasonable attorneys' fees and disbursements of the DIP Secured Parties incurred both (x) before the

Petition Date, which amounts shall be deemed approved and not required to comply with U.S. Trustee fee guidelines, and (y) on or after the Petition Date, subject to the notice provisions set forth in paragraph 8(e) herein.  The Debtor shall observe and comply with all of the financing, reporting and performance covenants and conditions set forth in the DIP Credit Agreement.

(b)    **Authorization to Borrow**.  Upon entry of the Interim Order, to enable the Debtor to continue to preserve the value of its estate during the period prior to entry of this Final Order and subject to the terms and conditions of the Interim Order, upon the execution of the DIP Credit Agreement and the other DIP Credit Documents, the Debtor was authorized to borrow the Initial DIP Loans up to a total committed amount of $5,000,000 under the DIP Credit Documents.  By this Final Order, the Debtor is authorized to borrow up to $15,000,000 under the DIP Credit Documents (inclusive of the borrowings previously approved under the Interim Order).

(c)    **Conditions Precedent**.  The DIP Lenders shall have no obligation to make any loan or advance under the DIP Credit Agreement unless the conditions precedent to making such loan under the DIP Credit Agreement have been satisfied in full or waived in writing (which may be via email) by the DIP Lenders in their respective sole discretion.

(d)    **DIP Liens**.  In order to secure the DIP Obligations, effective and automatically perfected immediately upon entry of the Interim Order and reaffirmed pursuant to this Final Order, pursuant to sections 361, 362, 364(c)(2), and 364(c)(3) of the Bankruptcy Code, subject to the Carve Out, the DIP Agent is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected post-petition security interests in and liens on (collectively, the "**DIP Liens**") all real, personal, and mixed property (including equity interests), whether now existing or hereafter arising and wherever located,

tangible and intangible, of the Debtor's estate, including, without limitation, all inventory, accounts receivable, general intangibles, contracts, chattel paper, owned real estate, real property leaseholds, governmental approvals, licenses and permits, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, securities, partnership interests, membership interests in limited liability companies, and capital stock of any subsidiary of the Debtor, including, without limitation, the products and proceeds thereof (the "**DIP Collateral**") and including (i) any avoidance actions arising under Chapter 5 of the Bankruptcy Code or applicable state law equivalents (such actions, collectively, "**Avoidance Actions**") and commercial tort claims; and (ii) the Debtor's rights under sections 506(c) and 550 of the Bankruptcy Code and the proceeds thereof.  Notwithstanding the foregoing, the DIP Collateral shall not include (x) any contract or license under which the granting of the DIP Liens thereon would constitute a breach or termination thereof other than to the extent such breach or termination would be rendered ineffective pursuant to applicable law (including applicable state law or the Bankruptcy Code) but shall, in any event, include the proceeds of such contracts and licenses or, (y) subject to the terms and conditions of paragraph 9(b) hereof, the funds held in the Funded Reserve Account (as defined below).  Notwithstanding anything to the contrary herein, the DIP Agent shall exercise commercially reasonable efforts to turn to the Prepetition Collateral first before exercising remedies against any other DIP Collateral.

    (e)  **DIP Lien Priority**.  The DIP Liens securing the DIP Obligations are valid, automatically perfected, and non-avoidable, and the DIP Agent shall have, subject to the Carve Out, (i) pursuant to section 364(c)(2) of the Bankruptcy Code, first-priority perfected security interests, liens, and mortgages on all DIP Collateral not subject to valid, perfected, enforceable,

and non-avoidable security interests, liens, or mortgages in existence on the Petition Date; (ii) pursuant to section 364(c)(3) of the Bankruptcy Code, junior security interests, liens, and mortgages only with respect to DIP Collateral that is subject to valid Permitted Liens; and (iii) pursuant to section 364(d), first-priority, priming perfected security interests, liens, and mortgages on all other DIP Collateral, including the Prepetition Collateral.  For the avoidance of doubt, the DIP Liens shall be senior to the Prepetition Liens and junior to the Carve Out.  Other than as set forth herein or in the DIP Credit Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in this Chapter 11 Case or any Successor Case, and shall be valid and enforceable against any trustee appointed in this Chapter 11 Case or any Successor Case, upon the conversion of this Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of this Chapter 11 Case or any Successor Case.  The DIP Liens shall not be subject to section 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

(f)      **Enforceable Obligations**.  The DIP Credit Documents shall constitute and evidence the valid and binding obligations of the Debtor, which obligations shall be enforceable against the Debtor, its estate, and any successors thereto and its creditors or representatives thereof, in accordance with their terms.

(g)      **Protection of DIP Agent and Other Rights**.  From and after the Petition Date, the Debtor shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Credit Agreement, the Interim Order, and this Final

18

Order and in strict compliance with the Approved Budget (subject to any Permitted Variance as defined below).

(h)    **Superpriority Administrative Claim Status**.  Upon entry of the Interim Order and reaffirmed pursuant to this Final Order, the DIP Lenders are hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code,  allowed super-priority administrative expense claims in this Chapter 11 Case and any Successor Case (collectively, the "**DIP Superpriority Claims**" and, together with the DIP Liens, the "**DIP Protections**") for all DIP Obligations, subject only to the Carve Out:  (i) having priority over any and all administrative expense claims and unsecured claims against the Debtor or its estate in this Chapter 11 Case and any Successor Case, at any time existing or arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code; and (ii) which shall at all times be senior to the rights of the Debtor and its estate, and any subsequent trustee or other estate representative to the extent permitted by law. Notwithstanding anything to the contrary herein, the DIP Agent shall exercise commercially reasonable efforts to satisfy the DIP Superpriority Claims from the proceeds of the Prepetition Collateral first before turning to the proceeds of any other DIP Collateral.

3.    **Authorization to Use Proceeds of DIP Facility**.  Pursuant to the terms and conditions of the Interim Order, this Final Order, the DIP Credit Agreement, and the other DIP Credit Documents, and in accordance with the Approved Budget (subject to the Permitted Variances), the Debtor is authorized to use the advances under the DIP Credit Agreement during the period commencing immediately after the entry of the Interim Order (and reaffirmed pursuant

to this Final Order) and terminating upon the occurrence of a DIP Termination Event (as defined below) and the termination of the DIP Credit Agreement in accordance with its terms and subject to the provisions hereof.  The Debtor and the DIP Agent may agree in writing (which may be via email) to modify the Approved Budget in their discretion at any time that the DIP Facility remains outstanding without further notice or approval by this Court.

4.    **DIP Roll-Up Loans**.  Upon entry of ~~this Final~~the Interim Order ~~and~~, the DIP Roll-Up Loans were approved.  The DIP Roll-Up Loans are subject to the reservation of rights in paragraph 12 below~~, without any further action by the Debtor or any other party, and as a condition to the provision of liquidity under the DIP Facility, the DIP Roll-Up Loans, including the Final Roll-Up Loans, are approved and the Final Roll-Up Loans shall be replaced and refinanced and shall constitute DIP Obligations~~.

5.    **Access to Records**.  The Debtor shall provide the DIP Secured Parties' advisors with all reporting and other information required to be provided to the DIP Secured Parties under the DIP Credit Documents.  In addition to, and without limiting, whatever rights to access the DIP Secured Parties have under the DIP Credit Documents, upon reasonable notice to counsel to the Debtor (email being sufficient), at reasonable times during normal business hours, the Debtor shall permit representatives, professionals, agents, and employees of the DIP Secured Parties to have reasonable access to (i) inspect the Debtor's assets, and (ii) reasonably requested information (including historical information and the Debtor's books and records) and personnel, including regularly scheduled meetings as mutually agreed with senior management of the Debtor and other advisors of the Debtor (during normal business hours), and the DIP Secured Parties shall be provided with access to all information they shall reasonably request, excluding any information for which confidentiality is owed to third parties, information subject to

attorney-client or similar privilege, or where such disclosure would not be permitted by any applicable requirements of law.

6.    **Authorization to Use Cash Collateral**.  The Debtor is hereby authorized to use Cash Collateral (including, without limitation, after the repayment in full of the DIP Obligations) pursuant to the terms of the Interim Order, this Final Order, and the DIP Credit Documents, as applicable, and in accordance with the Approved Budget (subject to the Permitted Variances), subject to paragraph 19 herein.  Nothing in the Interim Order or this Final Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business, or the Debtor's use of any Cash Collateral (including, without limitation, proceeds of the Prepetition Collateral), except as expressly permitted in this Final Order, the DIP Credit Agreement, and the other DIP Credit Documents, and in accordance with the Approved Budget (subject to the Permitted Variances).

7.    **Post-Petition Lien Perfection**.   This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and Adequate Protection Liens (as defined below) without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Liens or the Adequate Protection Liens to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent or the Prepetition Agent, as applicable, may, in its sole discretion, file such financing statements, mortgages, notices of liens, and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing

statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of this Chapter 11 Case.  The Debtor shall execute and deliver to the DIP Agent and the Prepetition Agent all such financing statements, mortgages, notices, and other documents as the DIP Agent or the Prepetition Agent, as applicable may reasonably request to evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the DIP Liens or the Adequate Protection Liens granted pursuant hereto.  The DIP Agent and the Prepetition Agent, in each of their sole discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file or record financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the recording officer shall be authorized to file or record such copy of this Final Order.

8.    **Adequate Protection**.    The Prepetition Secured Parties shall receive the following as adequate protection, effective as of the Petition Date, against any Diminution in Value of such Prepetition Secured Party's interest in the Prepetition Collateral (such interest being subject to the reservation of rights in paragraph 12 below) caused by the imposition of the automatic stay or the Debtor's use, sale, or disposition of the Prepetition Collateral during this Chapter 11 Case (collectively, the "**Adequate Protection Package**"):

(a)    *Adequate Protection Liens for the Prepetition Secured Parties.*    The Prepetition Agent, for the benefit of the Prepetition Secured Parties, is hereby granted, pursuant to sections 105, 361, 363(e), and 364(d)(1) of the Bankruptcy Code, continuing, valid, binding, enforceable, and perfected post-petition security interests in and liens on the DIP Collateral (the "**Adequate Protection Liens**").  The Adequate Protection Liens shall be subject to the Carve Out and the Permitted Liens as set forth in this Final Order and shall be (i) with respect to the

Prepetition Collateral, junior to the DIP Liens and senior to the Prepetition Liens, and (ii) otherwise junior only to the DIP Liens.  Notwithstanding anything to the contrary herein, the Prepetition Agent shall exercise commercially reasonable efforts to turn to the Prepetition Collateral first before exercising remedies against any other DIP Collateral.

(b)    Except as provided herein or in the DIP Credit Agreement, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter arising in this Chapter 11 Case or any Successor Case, and shall be valid and enforceable against any trustee appointed in this Chapter 11 Case or any Successor Case or upon the dismissal of any of this Chapter 11 Case or any Successor Case.  The Adequate Protection Liens shall not be subject to section 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

(c)    *Allowed Superpriority Claim of the Prepetition Secured Parties.*  As further adequate protection of the interests of the Prepetition Secured Parties against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Secured Parties are hereby granted allowed super-priority administrative expense claims in this Chapter 11 Case and any Successor Case against the Debtor under sections 503 and 507(b) of the Bankruptcy Code (the "**507(b) Claim**").

(d)    Subject to the relative priorities set forth in subparagraph (c) of this paragraph 8, the 507(b) Claim shall have priority over all other administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered

23

pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, and 1114, and any other provision of the Bankruptcy Code. The 507(b) Claim shall be subject to the Carve Out and the Permitted Liens as set forth in this Final Order and shall be junior only to the DIP Superpriority Claims. Notwithstanding anything to the contrary herein, the Prepetition Agent shall exercise commercially reasonable efforts to satisfy the 507(b) Claim from the proceeds of the Prepetition Collateral first before turning to the proceeds of any other DIP Collateral.

(e) *Adequate Protection Payments.* As further adequate protection of the interests of the Prepetition Secured Parties, the Debtor shall make the following periodic adequate protection payments to the Prepetition Secured Parties in cash (without the need for the filing of a formal fee application where otherwise applicable or comply with U.S. Trustee fee guidelines) (the "**Adequate Protection Payments**"): to the Prepetition Secured Parties (such parties also being the DIP Secured Parties in this Chapter 11 Case), reasonable and documented legal fees and out-of-pocket expenses of the Prepetition Agent, Morrison & Foerster LLP, and local Delaware bankruptcy counsel Potter Anderson & Corroon LLP, in each case incurred or arising before, on, or after the Petition Date, in accordance with this Final Order. A summary invoice for such fees and expenses shall be provided to the Debtor and the U.S. Trustee (which may be via email) (collectively, the "**Fee Notice Parties**"). After delivery of a summary invoice, the Fee Notice Parties shall have ten (10) calendar days to raise an objection thereto with respect to any of the fees, costs, and expenses incurred or arising on or after the Petition Date (the "**Fee Objection Period**"). Any objections raised by the Fee Notice Parties with respect to the Debtor's payment of such amounts must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional. If no objection is made by any of

24

the Fee Notice Parties within the Fee Objection Period, then, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtor, and in no event later than three (3) business days after expiration of the Fee Objection Period.  If an objection is raised by any of the Fee Notice Parties within the Fee Objection Period, such objection shall be subject to resolution by the Court.  Pending such resolution, the undisputed portion of any such fee and expense statement or invoice shall be paid promptly by the Debtor, without further order of the Court following the expiration of the Fee Objection Period.  Notwithstanding the foregoing, the Debtor was authorized and directed to pay within two (2) calendar days of the date of the Interim Order, the Adequate Protection Payments incurred on or prior to the date of the Interim Order without the need for any of the foregoing professionals to first deliver a summary invoice or other supporting documentation to the Fee Notice Parties (other than the Debtor).  For the avoidance of doubt, any and all fees, costs, and expenses paid prior to the Petition Date by the Debtor to the foregoing professionals were approved in full pursuant to the Interim Order and are hereby reaffirmed pursuant to this Final Order and shall not be subject to recharacterization, avoidance, subordination, disgorgement, or any similar form of recovery by the Prepetition Secured Parties or any other person.

(f)     *Payment of Certain Interest.*   As further adequate protection of the interests of the Prepetition Secured Parties, the Debtor shall pay the Prepetition Secured Parties, in kind, an amount equal to interest accruing upon the Prepetition Obligations at the default rate of interest as provided in and otherwise subject to the terms of the Prepetition Credit Documents in accordance with the Approved Budget.

(g)     *Adequate Protection Reservation of Rights.*   The receipt by the Prepetition Secured Parties of the Adequate Protection Package shall not be deemed an admission that the

interests of the Prepetition Secured Parties are adequately protected.  Notwithstanding any other provision hereof, the grant of the Adequate Protection Package to the Prepetition Secured Parties pursuant hereto is without prejudice to the rights of the Prepetition Secured Parties to seek modification of the grant of the Adequate Protection Package provided hereby so as to provide different or additional adequate protection and without prejudice to the right of the Debtor or any other party in interest to contest any such modification.

9.    **Carve Out**.

(a)    The rights and claims of the DIP Secured Parties, including the DIP Obligations, DIP Liens, and DIP Superpriority Claims, and the Prepetition Secured Parties, including the Prepetition Obligations, Adequate Protection Liens, and 507(b) Claim, shall be subject and subordinate in all respects to the payment of the Carve Out.  As used in this Final Order, "**Carve Out**" means the following expenses: (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $25,000 (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (including any restructuring, sale, success, or other transaction fee of Raymond James & Associates, Inc.) (together, the "**Allowed Debtor Professional Fees**") incurred by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "**Professional Persons**") at any time before or on the first calendar day following delivery by the DIP Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice (these clauses (i) through (iii), the "**Pre-Carve**

Out Trigger Amounts"); and (iv) Allowed Debtor Professional Fees not to exceed $300,000 incurred after the first calendar day following delivery by the DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**," and together with the Pre-Carve Out Trigger Amounts, the "**Carve Out Amount**").  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtor, its restructuring counsel, and the U.S. Trustee  which notice may be delivered following the occurrence and during the continuation of an Event of Default (as defined below) and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

       (b)       *Carve Out Funded Reserve*.  For the period prior to the delivery of the Carve Out Trigger Notice, the Debtor shall fund from the DIP Facility or cash on hand into a segregated trust account (the "**Funded Reserve Account**") held by counsel for the Debtor for the benefit of Professional Persons the amounts set forth in the Approved Budget for Professional Persons.  The Debtor shall use funds held in the Funded Reserve Account exclusively to pay Allowed Professional Fees and other obligations included within the Carve Out in accordance with the Approved Budget as they become allowed and payable pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any interim or final orders of the Court; provided that when all Allowed Professional Fees provided for in the Approved Budget that have funded into the Funded Reserve Account have been paid, any unused funds remaining in the Funded Reserve Account for those periods shall revert to the DIP Agent for the benefit of the DIP Lenders.  Funds transferred to the Funded Reserve Account shall be subject to the DIP Liens and DIP Superpriority Claims granted hereunder solely to the extent of such reversionary

interest; provided, that, for the avoidance of doubt, such liens and claims shall be subject in all respects to the Carve Out.

(c)    *Carve Out Funding*.    Notwithstanding anything in the DIP Credit Documents to the contrary, on the day on which a Carve Out Trigger Notice is validly delivered (the "**Carve Out Trigger Notice Date**"), the Carve Out Trigger Notice shall constitute a demand to the Debtor to utilize all cash on hand as of such date and any available cash thereafter held by the Debtor to fund the Funded Reserve Account an amount equal first to the then-unpaid amounts of the Allowed Professional Fees for the period prior to the Carve Out Trigger Notice Date and then the Post-Carve Out Trigger Notice Cap.  All funds in the Funded Reserve Account shall be used to pay the Pre-Carve Out Trigger Amounts, but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to pay the obligations set forth in the Post-Carve Out Trigger Notice Cap, and then, to the extent the Funded Reserve Account has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all DIP Obligations have been terminated, in which case any such excess shall be paid to the Debtor.  Further, notwithstanding anything to the contrary in the Interim Order or this Final Order, disbursements by the Debtor from the Funded Reserve Account shall not constitute DIP Loans or increase or reduce the DIP Obligations.

(d)    The failure of the Funded Reserve Account to satisfy in full the Allowed Professional Fees in full shall not affect the priority of the Carve Out, which shall be senior to all DIP Obligations and Prepetition Obligations; *provided* that, to the extent that the Funded Reserve Account is actually funded, the Carve Out shall be reduced by such funded amount dollar-for-dollar (except that such reductions shall not affect the Debtor's obligation to pay

statutory fees to the U.S. Trustee).  In no way shall the Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Funded Reserve Account, or any of the terms of this Final Order be construed as a cap or limitation on the amount of the Allowed Debtor Professional Fees due and payable by the Debtor or that may be allowed by the Court at any time (whether by interim order, final order, or otherwise).  Any payment or reimbursement made prior to the occurrence of the Carve Out Trigger Notice Date in respect of any Allowed Professional Fees shall not reduce the Post-Carve Out Trigger Notice Cap.

(e)     None of the DIP Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Persons incurred in connection with this Chapter 11 Case or any Successor Case.  Nothing in the Interim Order or this Final Order or otherwise shall be construed to obligate the DIP Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Persons or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.

10.     **Limitation on Use of the DIP Facility, the DIP Collateral, and the Prepetition Collateral (Including Cash Collateral)**.  Notwithstanding anything herein or in any other order of this Court to the contrary, the DIP Facility (including any disbursements set forth in the Approved Budget or obligations benefitting from the Carve Out), the DIP Collateral, the Prepetition Collateral, any Cash Collateral or the Carve Out may not be used to (a) investigate, analyze, commence, prosecute, threaten, litigate, object to, contest or challenge in any manner or raise any defenses to the validity, perfection, priority, extent or enforceability of any amount due under the DIP Credit Documents, the Prepetition Credit Documents or the liens or claims granted under the Interim Order or this Final Order, the DIP Credit Documents or the Prepetition Credit Documents, including the Prepetition Liens and the DIP Liens, or any mortgage, security interest

or lien with respect thereto, or any other rights or interests or replacement liens with respect thereto or any other rights or interests of any of the DIP Secured Parties or the Prepetition Secured Parties, (b) investigate, analyze, or assert any claims and defenses, including any Avoidance Actions, or any other causes of action against the DIP Secured Parties or the Prepetition Secured Parties or, in each case, their respective agents, affiliates, subsidiaries, directors, officers, employees, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Agent's assertion, enforcement or realization on the Prepetition Collateral or the DIP Collateral, in accordance with the DIP Credit Documents, the Prepetition Credit Documents, the Interim Order, or this Final Order, the exercise of rights by the DIP Secured Parties or the Prepetition Secured Parties once an Event of Default (as defined below) has occurred and is continuing or any other rights or interest of any of the DIP Secured Parties or the Prepetition Secured Parties following the occurrence of a DIP Termination Event and after the Remedies Notice Period (as defined below), (d) seek to subordinate (other than to the Carve Out or as set forth in this Final Order) or recharacterize the DIP Obligations or any of the Prepetition Obligations or to disallow or avoid any claim, mortgage, security interest, lien or replacement lien or payment thereunder, (e) seek to modify any of the rights granted to the DIP Secured Parties or any of the Prepetition Secured Parties hereunder or under the DIP Credit Documents or the Prepetition Credit Documents, in the case of each of the foregoing clauses (a) through (e), without such party's prior written consent, (f) pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of this Court or otherwise permitted under the DIP Credit Documents, or (g) pay Allowed Professional Fees, disbursements, costs or expenses incurred by any person in connection with any of the foregoing.

11.  **Payment of Compensation**.  Nothing herein shall be construed as consent to the allowance of any Allowed Professional Fees, or shall affect the rights of the DIP Lenders to object to the allowance and payment of such fees and expenses or to permit the Debtor to pay any such amounts not set forth in the Approved Budget.  Further, nothing herein shall be construed to obligate the DIP Lenders to pay any professional fees or to assure that the Debtor has sufficient funds on hand to pay any professional fees.

12.  **Effect of Stipulations**.

(a)  _Generally_.  The admissions, stipulations, agreements, releases, and waivers set forth in the Interim Order and this Final Order (collectively, the "**Prepetition Lien and Claim Stipulations**") were binding on the Debtor and any successor thereto upon entry of the Interim Order and are reaffirmed upon entry of this Final Order.  In addition, the Prepetition Lien and Claim Stipulations shall be binding on any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including any official committee appointed in this Chapter 11 Case, unless, and solely to the extent that, (i) a party in interest with standing and requisite authority (other than the Debtor, as to which any Challenge (as defined below) is irrevocably waived and relinquished) has timely filed the appropriate pleadings and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 12) challenging the Prepetition Lien and Claim Stipulations (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "**Challenge**") by no later than seventy-five (75) calendar days from the entry of the Interim Order (the "**Challenge Deadline**" and, such period, the "**Challenge**

31

Period"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Secured Parties (without additional notice to or approval from this Court), or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline; and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal. Notwithstanding the foregoing, if a chapter 11 trustee is appointed or this Chapter 11 Case is converted to chapter 7 prior to the expiration of the Challenge Deadline, the chapter 11 trustee or chapter 7 trustee, as applicable, shall have until the later of the Challenge Deadline or the 30th day after the appointment of the chapter 11 trustee or the conversion of this Chapter 11 Case to chapter 7, as applicable, to commence a Challenge, subject to any further extension by order of the Court for cause. The timely filing of a motion seeking standing to file a Challenge before the termination of the Challenge Period shall toll the Challenge Deadline only as to the party that timely filed such standing motion and only with respect to the specific Challenges identified in such standing motion until such motion is resolved or adjudicated by the Court. Any pleadings, including, but not limited to, the complaint, filed in any Challenge proceeding shall set forth with specificity the basis for such Challenge (and any Challenge not so specified prior to the Challenge Deadline shall be deemed forever waived, released and barred). The Court may fashion any appropriate remedy following a successful Challenge. For the avoidance of doubt, (i) any trustee appointed or elected in this Chapter 11 Case or (ii) any subsequently appointed or elected chapter 7 trustee shall, in each case, until the expiration of the Challenge Period, and thereafter for the duration of any adversary proceeding or contested matter timely commenced pursuant to this paragraph 12 (whether commenced by such trustee or

commenced by any other party in interest on behalf of the Debtor's estate), be deemed to be a party other than the Debtor and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtor in the Interim Order or this Final Order.  For the avoidance of doubt, as to the Debtor, upon entry of the Interim Order and hereby reaffirmed pursuant to this Final Order, all Challenges, and any right to assert any Challenge, were irrevocably waived and relinquished as of the Petition Date, and the Debtor's Stipulations shall be binding in all respects on the Debtor irrespective of the filing of any Challenge.

         (b)     _Binding Effect_.  To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Stipulations, then, without further notice, motion, or application to, order of, or hearing before this Court and without the need or requirement to file any proof of claim, (x) the obligations in respect of the Prepetition Credit Documents shall constitute allowed claims, not subject to any claims and defenses (whether characterized as a counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by Bankruptcy Code section 101(5)), impairment, subordination (whether equitable, contractual or otherwise) or other challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law), for all purposes in this Chapter 11 Case and any Successor Case; (y) the Prepetition Liens shall not be subject to any other or further Challenge, including, without limitation, any claims and defenses, which shall be deemed to be forever waived and barred, and all parties in interest shall be enjoined from seeking to exercise the rights of the Debtor's estate,

including any successor thereto (including any estate representative or a trustee, whether such trustee is appointed or elected prior to or following the expiration of the Challenge Period); and (z) the Prepetition Lien and Claim Stipulations shall, pursuant to the Interim Order and this Final Order, be of full force and effect and forever binding upon the applicable Debtor's estate and all creditors, interest holders and other parties in interest, including a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtor's estate, in this Chapter 11 Case and any Successor Case.

(c)     Notwithstanding anything to the contrary herein, if any such Challenge proceeding is properly and timely commenced, the Prepetition Lien and Claim Stipulations shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (b) above, except to the extent that any of such Prepetition Lien and Claim Stipulations is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment as provided in subparagraph (b) above.  To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Secured Parties shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred under the Prepetition Credit Documents in defending themselves in any such proceeding as adequate protection, except if a Challenge results in a determination that the entirety of the Prepetition Liens are invalid.  Nothing in the Interim Order or this Final Order vests or confers on any person, including any official committee appointed in this Chapter 11 Case, standing or authority to pursue any cause of action belonging to the Debtor or its estate, including, without limitation, Challenges with respect to the Prepetition Lien and Claim Stipulations, and all rights to object to such standing are expressly reserved.

13.     **Approved Budget**.   Attached to the Interim Order as Exhibit B is a 13-week budget approved by the DIP Agent, which sets forth, among other things, projected cash receipts and cash disbursements. Such budget shall be updated from time to time as set forth in the DIP Credit Agreement.   The Debtor shall at all times comply with the Approved Budget (subject to the Permitted Variances) and shall further comply with the other reporting requirements set forth in the DIP Credit Agreement.   As of any date of determination, the budget or the updated budget that has most recently become the "Approved Budget" in accordance with and as defined in the DIP Credit Agreement shall be referred to herein as the "Approved Budget."   Until any updated budget has become the Approved Budget, the Debtor shall be subject to and be governed by the terms of the Approved Budget then in effect (subject to Permitted Variances).   "**Permitted Variance**" means, with respect to the Approved Budget, tested on a four (4)-week rolling basis, cumulative actual expenses for the most recently completed week to be not more than 115% of cumulative budgeted expenses for the period ending with the most recently completed week; *provided* that if for any four (4)-week rolling period, actual cash expenditures exceed expected cash expenditures, the Permitted Variance for cash expenditures for such testing period will be deemed to have been met if the cumulative actual net cash flow for such period is equal to or greater than the cumulative expected net cash flow for such period.   For the avoidance of doubt, documented fees and out-of-pocket expenses paid to the DIP Secured Parties or their respective professionals shall not be included in the foregoing variance testing; *provided*, *however*, documented fees and out-of-pocket expenses paid to the Debtor's professionals or any professionals retained by any official committee formed during this Chapter 11 Case shall be included in the foregoing variance testing.

14.    **Section 506(c) Claims**.    No costs or expenses of administration that have been or may be incurred in this Chapter 11 Case or any Successor Case at any time may be charged against the DIP Secured Parties or the Prepetition Secured Parties, or any of their respective claims, or the DIP Collateral or Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Agent or Prepetition Agent, as applicable.  Nothing contained in the Interim Order or this Final Order shall be deemed a consent by the DIP Agent or the Prepetition Agent, as applicable, to any charge, lien, assessment, or claim against the DIP Collateral or Prepetition Collateral under section 506(c) of the Bankruptcy Code or otherwise, and no consent shall be implied from any action, inaction, or acquiescence by the DIP Secured Parties or Prepetition Secured Parties, as applicable.

15.    **Collateral Rights**.  Unless the DIP Agent has provided its prior written consent or all DIP Obligations have been paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below) and all commitments to lend have terminated:

(a)    The Debtor shall not seek entry, in this Chapter 11 Case, or in any Successor Case, of any order that authorizes the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or entitled to priority administrative status that is senior or *pari passu* to those granted to the DIP Agent, respectively, pursuant to the Interim Order or this Final Order, unless such credit or indebtedness is sufficient to pay all of the DIP Obligations in full in cash; and

(b)     The Debtor shall not consent to relief from the automatic stay by any persons other than the DIP Agent to proceed against any DIP Collateral having a fair market value in excess of $25,000 without the express written consent of the DIP Agent.

16.     **Termination Events**.  Subject to any obligations under the Carve Out and any applicable grace period under the DIP Credit Documents and this Final Order and the Remedies Notice Period, (i) the DIP Obligations shall accelerate and become immediately due and payable in full, and (ii) the Debtor's right to use Cash Collateral shall immediately cease, in each case without further notice or action by the Court following the earliest to occur of any of the following unless waived in writing by the DIP Agent or the Prepetition Agent, as applicable (each a "**Termination Event**"):  (i) the occurrence of any Event of Default (as defined below); (ii) the Debtor's failure to comply with any provision of this Final Order (including, without limitation, the Approved Budget (and the Permitted Variances) and the Milestones); (iii) except as set forth below, the occurrence of the Maturity Date (as defined in the DIP Credit Agreement); (iv) the entry of an order authorizing the use of DIP Collateral or Cash Collateral or financing under Bankruptcy Code section 364 or the filing by the Debtor of a motion seeking such authority, in each case without the consent of the DIP Agent or the Prepetition Agent, as applicable; (v) dismissal or conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (vi) termination, modification, or reversal of this Final Order without the consent of the DIP Agent or the Prepetition Agent, as applicable; and (vii) the filing of a plan or disclosure statement that is not approved by the DIP Agent or Prepetition Agent, as applicable. Notwithstanding the foregoing, subject to paragraph 19 below, the Debtor's authority to use Cash Collateral shall continue following the repayment of the DIP Obligations in full if the Prepetition Agent consents to a form of Approved Budget for such period.

17.    **Disposition of Collateral**.  It shall be an Event of Default for the Debtor to sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral outside the ordinary course of business, without the prior written consent of the DIP Agent (and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent or an order of this Court), except as provided in the DIP Credit Agreement and this Final Order.

18.    **Events of Default**.  The occurrence of an "Event of Default" or "Default" under the DIP Credit Agreement shall constitute an event of default under this Final Order, unless expressly waived in writing by the DIP Agent, and such Events of Default or Defaults are explicitly incorporated by reference into this Final Order (collectively, the "**Events of Default**"). The failure of the Debtor to satisfy a Milestone (as defined in and set forth in Schedule 8.22 to the DIP Credit Agreement) (each, a "**Bankruptcy Milestone**"), shall constitute an Event of Default; *provided*, that the DIP Agent shall negotiate in good faith with the Debtor regarding any proposed extension of a Bankruptcy Milestone and the DIP Agent's consent to such an extension shall not be unreasonably withheld.

19.    **Rights and Remedies Upon a Termination Event**.

(a)    The Debtor shall promptly provide notice to counsel to the DIP Secured Parties and the U.S. Trustee of the occurrence of any Termination Event.  Upon the occurrence and during the continuation of a Termination Event (regardless of whether the Debtor has given the notice described in the previous sentence), and following the giving of not less than five (5) business days' prior written notice of such occurrence by the DIP Agent, which may be via email, to the Debtor and its counsel and the U.S. Trustee  (such notice, the "**Remedies Notice**," and such period, the "**Remedies Notice Period**"), (i) the DIP Secured Parties shall be entitled to exercise any of their rights and remedies against the DIP Collateral available to them under the

Interim Order or this Final Order, the DIP Credit Documents, and applicable non-bankruptcy law in accordance with the DIP Credit Documents, subject to the Carve-Out; (ii) the Prepetition Secured Parties may exercise any rights and remedies to satisfy the Prepetition Obligations and obligations with respect to the Adequate Protection Package, subject to the DIP Obligations, the DIP Superpriority Claims, the Permitted Liens, and the Carve Out, in accordance with the Prepetition Credit Documents; and (iii) any obligation otherwise imposed on the DIP Secured Parties to provide any loan or advance to the Debtor pursuant to the DIP Credit Documents shall immediately be terminated.  During the Remedies Notice Period, the Debtor shall continue to have the right to use Cash Collateral in accordance with the terms of this Final Order, solely to fund the Carve Out and pay necessary expenses to avoid immediate and irreparable harm to the Debtor's estate (subject to the Approved Budget and the Permitted Variances), or as otherwise agreed to in writing by the DIP Agent or the Prepetition Agent, as applicable.  Nothing in the Interim Order or this Final Order shall limit the ability of any party to immediately exercise rights and remedies with respect any non-Debtor.

(b)     Notwithstanding the immediately preceding subparagraph, immediately following the giving of notice by the DIP Agent of the occurrence of a DIP Termination Event, and subject to the full funding of the Carve Out: (i) the Debtor shall continue to deliver and cause the delivery of the proceeds of DIP Collateral to the DIP Lenders as provided in the DIP Credit Agreement and this Final Order, and (ii) the DIP Lenders shall continue to apply such proceeds in accordance with the provisions of this Final Order and of the DIP Credit Agreement. During the Remedies Notice Period, the Debtor and/or any other party in interest shall be entitled to seek an emergency hearing to consider (x) whether a DIP Termination Event has occurred and (y) any other appropriate relief.  Notwithstanding the foregoing and for the avoidance of doubt,

upon the expiration of the Remedies Notice Period, unless this Court has entered an order to the contrary, the Debtor's right to use Cash Collateral and the proceeds of the DIP Loans shall immediately cease, and the Prepetition Secured Parties and the DIP Secured Parties shall have the rights set forth in paragraph (a) immediately above, without the necessity of seeking relief from the automatic stay or further notice or order.

(c)     Nothing included herein shall prejudice, impair, or otherwise affect the DIP Secured Parties' rights to seek any other or supplemental relief in respect of the DIP Secured Parties, as provided in the DIP Credit Agreement or the other DIP Credit Documents.

20.    **Payments Free and Clear**.  Any and all payments or proceeds remitted to the DIP Secured Parties or Prepetition Secured Parties (subject to the reservation of rights in paragraph 12 hereof) pursuant to the provisions of the Interim Order, this Final Order, the DIP Credit Documents or any subsequent order of the Court shall be irrevocably received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code sections 506(c) or 552(b), whether asserted or assessed by, through or on behalf of the Debtor.

21.    **Indemnification**.  The Debtor shall indemnify and hold harmless the DIP Agent, the DIP Lenders, and each of their respective affiliates and each of their respective officers, directors, employees, agents, advisors, attorneys and representatives (collectively, the "**Indemnified Parties**"), from and against all reasonable and documented out-of-pocket costs, expenses, liabilities arising out of or relating to the transactions contemplated hereby and any actual or proposed use of the proceeds of any loans made under the DIP Facility, and such other liabilities as set forth in, in accordance with and subject to the limitations of the DIP Credit Documents and the Approved Budget; *provided* that no Indemnified Parties will be indemnified

40

for any losses, claims, damages, liabilities or related expenses to the extent determined by a final, nonappealable judgment of a court of competent jurisdiction to have been incurred solely by reason of the gross negligence, willful misconduct, or fraud of such Indemnified Parties; *provided*, *further*, that the Debtor shall not indemnify any Indemnified Party for costs and expenses such Indemnified Party to the extent incurred in connection with the defense of a successful Challenge brought in accordance with paragraph 12(a) hereof.

22.    **Proofs of Claim**.  Neither the DIP Agent nor the DIP Lenders will be required to file proofs of claim in this Chapter 11 Case or any Successor Case in order to assert claims arising under the DIP Credit Documents.  Neither the Prepetition Agent nor the Prepetition Lenders shall be required to file proofs of claim in this Chapter 11 Case or any Successor Case in order to assert claims on behalf of themselves or the Prepetition Secured Parties on account of the obligations arising under the Prepetition Credit Documents, including, without limitation, any principal, unpaid interest, fees, expenses, and other amounts under the Prepetition Credit Documents; *provided*, however, the Prepetition Agent is permitted (but shall not be required) to file one master proof of claim in this Chapter 11 Case on account of the obligations arising under the Prepetition Credit Documents, as applicable.

23.    **Other Rights and Obligations**.

(a)    *Good Faith Under Section 364(e) of the Bankruptcy Code.    No Modification or Stay of this Final Order*.  Based on the findings set forth in this Final Order and the record made during the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter reversed, modified, amended, or vacated by a subsequent order of this or any other Court, the DIP Agent and the DIP Lenders are entitled to all the benefits and protections provided in section

41

364(e) of the Bankruptcy Code.  Any such reversal, modification, amendment, or vacatur shall not affect the validity and enforceability of any advances made pursuant to this Final Order or the liens or priority authorized or created hereby.  Any claims, liens, or DIP Protections granted to the DIP Agent or the DIP Lenders hereunder arising prior to the effective date of such reversal, modification, amendment, or vacatur shall be governed in all respects by the original provisions of this Final Order, and the DIP Secured Parties shall be entitled to all of the rights, remedies, privileges, and benefits, including the DIP Protections granted herein, with respect to any such claim.  Since the loans made pursuant to the DIP Credit Agreement are made in reliance on this Final Order, the obligations owed to the DIP Secured Parties prior to the effective date of any reversal or modification of this Final Order cannot, as a result of any subsequent order in this Chapter 11 Case or in any Successor Case, be subordinated, lose their lien priority or super-priority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Secured Parties under this Final Order and/or the DIP Credit Documents.

(b)     _Binding Effect_.  The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties, the Debtor, and each of their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) whether in this Chapter 11 Case, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 case.

(c)     _No Waiver_.  The failure of the DIP Secured Parties to seek relief or otherwise exercise their rights and remedies under the DIP Credit Documents, the DIP Facility, the Interim Order, this Final Order, or otherwise, as applicable, shall not constitute a waiver of

the DIP Secured Parties' rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the DIP Secured Parties to (i) request conversion of this Chapter 11 Case to a case under chapter 7, dismissal of this Chapter 11 Case, or the appointment of a trustee in this Chapter 11 Case; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan of reorganization; or (iii) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) the DIP Secured Parties may have pursuant to the Interim Order, this Final Order, the DIP Credit Documents, or applicable law. Nothing in the Interim Order or this Final Order shall interfere with the rights of any party with respect to any non-Debtor.

(d)     *No Third-Party Rights*. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

(e)     *No Marshaling*. Except as expressly set forth in paragraphs 2(d), 2(h), 8(a), and 8(d), the DIP Secured Parties and Prepetition Secured Parties, as applicable, shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral and Prepetition Collateral, as applicable.

(f)     *Section 552(b)*. In light of the DIP Secured Parties' agreement to subordinate their liens and super-priority claims to the Carve Out and the Prepetition Secured Parties' consent to use of Cash Collateral, the DIP Secured Parties and the Prepetition Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and

the "equities of the case" exception shall not apply with respect to proceeds, product, offspring, or profits of any of the DIP Collateral or Prepetition Collateral, as applicable.

(g)    *Amendment*.    The Debtor and the DIP Agent may from time to time amend, restate, amend and restate, modify, waive, or supplement any provision of the DIP Credit Documents, without further order of this Court if such amendment, restatement, amendment and restatement, modification, waiver, or supplement is not material or is necessary to conform the terms of the DIP Credit Documents; *provided* that notice of the foregoing shall be provided to the U.S. Trustee.    Any material amendment, restatement, amendment and restatement, modification, waiver, or supplement to the DIP Credit Documents (as determined by the DIP Agent in its reasonable discretion) must be on notice to the U.S. Trustee who shall have five (5) business days from the date of such notice within which to object in writing to such amendment, restatement, amendment and restatement, modification, waiver, or supplement.    If the U.S. Trustee timely objects to any such amendment, restatement, amendment and restatement, modification, waiver, or supplement to the DIP Credit Documents, such amendment, restatement, amendment and restatement, modification, waiver, or supplement shall only be permitted pursuant to an order of this Court (which the Debtor, the DIP Agent, and the Prepetition Agent agree may be on shortened notice).    For the avoidance of doubt, the waiver or extension of a Bankruptcy Milestone or the delivery of an Updated Budget (as defined in the DIP Credit Agreement) shall not constitute a material amendment, restatement, amendment and restatement, modification, waiver, or supplement to the DIP Credit Documents.

(h)    *Credit Bidding*.    In connection with any sale process authorized by the Court, (i) the DIP Agent (or its assignee, as applicable) may credit bid (each a "**Credit Bid**") up to the full amount of the applicable outstanding DIP Obligations, in each case including any

accrued interest and expenses, to the extent provided for in section 363(k) of the Bankruptcy Code in any sale of any DIP Collateral, and (ii) the Prepetition Agent (or its assignee, as applicable) may Credit Bid up to the full amount of its outstanding Prepetition Obligations, including any accrued interest and expenses, as provided for in section 363(k) of the Bankruptcy Code in any sale of any Prepetition Collateral, in each case, whether such sale is effectuated through section 363 or section 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, in each case, without further order from this Court authorizing the same.  For the avoidance of doubt, the DIP Roll-Up Loans and the Prepetition Obligations shall remain subject to the reservation of rights in paragraph 12 hereof notwithstanding any credit bid of the DIP Roll-Up Loans or the Prepetition Obligations.  To the extent that there is a successful Challenge and the DIP Agent or the Prepetition Agent have submitted a Credit Bid pursuant to section 363(k), the Court may fashion an appropriate remedy.

(i)    _No Subrogation_.  In no event shall any person or entity who pays (or through the extension of credit to the Debtor, causes to be paid) any of the DIP Loans be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens, or security interests granted in favor of, or conferred upon, the DIP Secured Parties by the terms of this Final Order, the other DIP Credit Documents, or otherwise at law or contract or in equity, unless and until such time as all of the DIP Loans have been indefeasibly paid in full in cash on a final basis and all lending commitments have been terminated under the DIP Facility and the DIP Secured Parties have received a full release in connection therewith.

(j)    _Rights Preserved_.  Other than as expressly set forth in this Final Order, any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Secured Parties and the Prepetition Secured Parties are preserved.

24. **Releases**. Subject to the rights and limitations set forth in paragraph 12 with respect to the DIP Roll-Up Loans and the Prepetition Secured Parties in their capacities as such, the Debtor, for itself and its successors, assigns, parents, subsidiaries, affiliates, predecessors, employees, agents, heirs and executors, as applicable, hereby fully and unconditionally releases the DIP Secured Parties, the Prepetition Secured Parties, each solely in their capacity as such, and each of their respective directors, officers, employees, subsidiaries, affiliates, attorneys, financial advisors, investment bankers, agents, representatives, successors and assigns (collectively, the "**Released Parties**") from any and all claims, causes of action, costs or demands of whatever kind or nature, whether known or unknown, liquidated or unliquidated, fixed or contingent, asserted or unasserted, foreseen or unforeseen, or matured or unmatured, which the Debtor may have had against the Released Parties by reason of any act or omission on the part of the Released Parties occurring prior to the date hereof, in each case regarding or relating to the DIP Credit Agreement, the DIP Facility, the DIP Credit Documents or any document or instrument relating thereto, the Prepetition Credit Agreement, the Prepetition Credit Documents, or any document or instrument relating thereto (collectively, the "**Released Matters**"); *provided*, that Released Matters shall not include (a) any obligations of the DIP Secured Parties under the DIP Credit Documents or this Final Order and (b) any claims, causes of action, costs or demands of whatever kind or nature, whether known or unknown, liquidated or unliquidated, fixed or contingent, asserted or unasserted, foreseen or unforeseen, or matured or unmatured, resulting solely from the gross negligence or willful misconduct or fraud of the Released Parties, as determined by a court of competent jurisdiction in a final and non-appealable judgment or order.

25.     **Loss or Damage to Collateral**.  Nothing in the Interim Order, this Final Order, the DIP Credit Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtor in the operation of its business, or in connection with its restructuring efforts.  So long as the DIP Secured Parties and the Prepetition Secured Parties comply with their obligations under the DIP Credit Documents and this Final Order and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Secured Parties and the Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of the DIP Collateral shall be borne by the Debtor.

26.     **Insurance**. To the extent that any of the Prepetition Secured Parties are listed as additional insured and/or loss payee under the Borrower's or Guarantors' (each as defined in the DIP Credit Agreement) insurance policies, the DIP Secured Parties are deemed to be the additional insureds and/or loss payees under such insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, in each case, subject to the Carve Out, first, to the payment in full of the DIP Obligations and second, subject to paragraph 12 hereof, to the payment of the obligations arising under the Prepetition Credit Documents.

27.    **Modification of the Automatic Stay**.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtor to grant the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim, and  the 507(b) Claim; (b) permit the Debtor to incur all liabilities and obligations under the DIP Credit Documents; (c) permit the Debtor and the DIP Secured Parties to perform such other acts as are necessary to effectuate the terms of this Final Order; (d) authorize the Debtor to pay the Prepetition Secured Parties (subject to paragraph 12 hereof) and the DIP Secured Parties in accordance with the terms of this Final Order; and (e) permit the DIP Secured Parties and the Prepetition Secured Parties (subject to paragraph 12 hereof), subject to the Remedies Notice Period, to take any action and exercise all rights and remedies provided to them by the Interim Order, this Final Order, the DIP Credit Documents, the Prepetition Credit Documents, or applicable law.

28.    **Cooperation**.  All Prepetition Secured Parties shall cooperate with the DIP Agent in its efforts to enforce its liens and security interests in the DIP Collateral.  Such lenders shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect the DIP Agent from enforcing its rights or remedies in the DIP Collateral.

29.    **Proceeds of Subsequent Financing**.  If the Debtor, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in this Chapter 11 Case or any Successor Case shall obtain credit or incur debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Credit Documents and this Final Order at any time prior to (a) the indefeasible repayment in full in cash of all Prepetition Obligations and DIP Obligations and (b) the termination of the DIP Lenders' obligations to extend credit under the DIP Facility, then all the cash proceeds derived

from such credit or debt shall immediately be turned over to the DIP Agent to be applied to the DIP Obligations owing to the DIP Secured Parties and, thereafter, to the extent remaining, to the Prepetition Agent to be applied to the Prepetition Obligations (subject to paragraph 12 hereof).

30.    **Survival of Final Order and Other Matters**.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order that may be entered (i) confirming any chapter 11 plan in this Chapter 11 Case; (ii) converting this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or any Successor Case; (iii) to the extent authorized by applicable law, dismissing this Chapter 11 Case; (iv) withdrawing the reference of this Chapter 11 Case from this Court; or (v) providing for abstention from handling or retaining of jurisdiction of this Chapter 11 Case in this Court.  The terms and provisions of this Final Order, including the DIP Protections granted pursuant to this Final Order and the DIP Credit Documents, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections shall maintain their priority as provided by this Final Order until all the obligations of the Debtor to the DIP Secured Parties pursuant to the DIP Credit Documents have been indefeasibly paid in full in cash and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Credit Documents that survive such discharge by their terms).

(a)    *Inconsistency*.  In the event of any inconsistency between the terms and conditions of the DIP Credit Documents, the DIP Motion, the Interim Order, or this Final Order, the provisions of this Final Order shall govern and control.

(b)    *Enforceability*.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry of this Final Order.

Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

(c)     *Objections Overruled*.  All objections to the DIP Motion to the extent not withdrawn or resolved are hereby overruled on a final basis.

(d)     *No Waivers or Modification of Final Order*.  The Debtor irrevocably waives any right to seek any modification or extension of this Final Order without the prior written consent of the DIP Agent and the Prepetition Agent, and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Secured Parties or the Prepetition Secured Parties.

(e)     *Necessary Action*.  The Debtor is authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order and the transactions contemplated hereby.

31.     **Subordination Agreements**.  Nothing contained in the Interim Order or this Final Order shall alter or modify, or be deemed to alter or modify, the rights of any party under (a) that certain Amended and Restated Subordination Agreement, dated as of December 29, 2023, among the Debtor, the Prepetition Agent, and each noteholder party thereto (the "**December 2023 Subordination Agreement**"); (b) that certain Junior Lender Subordination Agreement, dated as of March 20, 2024, among the Debtor and each noteholder party thereto (the "**Junior Lender Subordination Agreement**"); and (c) that certain Senior Lender Subordination Agreement, dated as of March 20, 2024, among the Debtor, the Prepetition Agent, and each noteholder party thereto (the "**Senior Lender Subordination Agreement**," and together with the December 2023 Subordination Agreement and the Junior Lender Subordination Agreement, the "**Subordination Agreements**").

32.     **Conditions Precedent**.  Except as provided for in the Carve Out, no DIP Lender shall have any obligation to make any DIP Loan under the respective DIP Credit Documents unless all of the conditions precedent to the making of such extensions of credit under the applicable DIP Credit Documents have been satisfied in full or waived in accordance with such DIP Credit Documents.

33.     **Rights Preserved**.  Nothing in the Interim Order or this Final Order shall be deemed to waive or otherwise impair the Debtor's or DIP Lenders' rights to seek at any future hearing any of the relief set forth in the DIP Motion or otherwise available to them under the Bankruptcy Code in connection with any of the DIP Loans, including but not limited to, any relief that may be available to them under Bankruptcy Code sections 361 or 364.

34.    **Effect of this Final Order**.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and, notwithstanding Bankruptcy Rules 6003 and 6004 or any other Bankruptcy Rule, shall take effect and be enforceable as of the Petition Date immediately upon execution thereof, and there shall be no stay of execution or effectiveness of this Final Order.

35.    **Retention of Jurisdiction**.  The Court has and will retain jurisdiction to enforce this Final Order according to its terms.